# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00098-CR

**Dwayne Cassidy, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT
## NO. 1010181, HONORABLE BOB PERKINS, JUDGE PRESIDING

## O P I N I O N

At a bench trial, appellant Dwayne Cassidy was convicted of aggravated assault with a deadly weapon and sentenced to twelve years' imprisonment. *See* Tex. Pen. Code Ann. § 22.02 (West Supp. 2004). In two points of error, appellant contends the court erroneously admitted double hearsay and, by so doing, violated his Sixth Amendment confrontation right. We will overrule these contentions and affirm the conviction.

On the afternoon of September 24, 2000, Zachary Martin and Daphne Cavasoz were driving on South Congress Avenue in Austin when they saw a man run "frantically" from a convenience store and into the street. It is undisputed that this man was Makhnegae Shoukat, who was employed at the store. Moments later, Martin and Cavasoz saw a second man leave the store, get into a truck, and drive away. Thinking that this "looked a little strange," Martin followed the

truck for a few blocks as it sped down a side street, and Cavasoz wrote down the truck's license plate number. The couple then returned to the convenience store.

Austin Police Officer Robert Benfer was dispatched to the convenience store. When he arrived, he found emergency medical personnel treating Shoukat for a stab wound to his abdomen and cuts on his hand. Benfer testified and photographs in evidence show that there was a considerable amount of blood behind the counter and elsewhere inside the store. Martin and Cavasoz approached Benfer, told him what they had seen, and gave him the suspect's description and license plate number. Benfer radioed a request for other officers to be on the lookout for the truck.

Michonne Lee testified that appellant came to her apartment on the afternoon of September 24, 2000. Appellant had blood on his hands, arms, and clothing. He told Lee that he had been robbed and showed her a knife he said he used to defend himself. After appellant washed his hands and arms, he and Lee left the apartment in appellant's truck. The truck was stopped by Officer Maurice Forshee about thirty minutes after the assault. Forshee identified appellant at trial as the driver of the truck. He also identified a knife which he found beside appellant. When seized, the knife had blood on its blade. Martin and Cavasoz were brought to the scene of the stop by a police officer and identified appellant as the man they saw leaving the convenience store. They repeated their identifications at trial.

Shoukat was taken to a hospital where, one hour after the assault, he was interviewed by Officer Benfer. Shoukat is a native of Pakistan and does not speak English. Kassem Momin, another Pakistani native employed at the convenience store, served as an interpreter. Over objection, Benfer testified that Shoukat gave him a description of his assailant that matched that provided by

2

Martin and Cavasoz. He told the officer that the man had entered the store and asked to cash a check. When Shoukat refused to cash the check, the man stabbed him.

The next day, Officer Mark Gil met Shoukat at the convenience store. With the assistance of another employee, Gil showed Shoukat a photographic lineup and asked if it contained the man who stabbed him. Shoukat immediately identified appellant's photograph.

Appellant's points of error concern the admission of Benfer's testimony recounting Shoukat's statements at the hospital. Appellant asserts that the testimony was double hearsay: first from the complainant Shoukat to the interpreter Momin, and then from Momin to the witness Benfer. Appellant does not challenge the trial court's ruling that Shoukat's statements were excited utterances. *See* Tex. R. Evid. 803(2). He argues, however, that this hearsay exception applied only to Shoukat's statements to Momin, and that the court erred by not requiring the State to demonstrate that a second exception applied to Momin's statements to Benfer. Appellant asserts that the admission of Momin's statements to Benfer in the absence of an applicable hearsay exception violated his constitutional confrontation right. The State responds that the interpreter served merely as a "language conduit" through whom Shoukat spoke directly to Benfer. The State contends there was only one level of hearsay, the excited utterance exception applied, and no confrontation violation is shown. The district court admitted Benfer's testimony on this basis.

The traditional rule followed in Texas was as follows: "A person conversing with a third person through an interpreter is not qualified to testify to the other person's statements, because he knows them only through the hearsay of the interpreter. Ordinarily, therefore, the third person's words cannot be proved by any one except the interpreter himself." *Gulf, C. & S.F. Ry. Co. v. Giun*, 116 S.W.2d 693, 696 (Tex. 1938). As the State points out, *Giun* and earlier opinions to the

3

same effect were decided under "the common-law's mechanistic rules which tended to favor exclusion of evidence." *Montgomery v. State*, 810 S.W.2d 372, 375 (Tex. Crim. App. 1990). The new rules of evidence, on the other hand, "favor the admission of all logically relevant evidence for the jury's consideration." *Id.*

We are referred to only two Texas opinions addressing this question since the adoption of the modern rules of evidence. In *Durbin v. Hardin*, the court followed *Giun* and upheld the exclusion of testimony by a police officer regarding an accident-scene statement made by the declarant in Spanish that was interpreted at the scene by another officer. 775 S.W.2d 798, 801 (Tex. App.—Dallas 1989, writ denied). The court held that only the interpreter was competent to testify to the declarant's out-of-court statement; the officer's testimony based on the interpreter's translation was deemed inadmissible hearsay. *Id.*

More recently, another court of appeals opted to join "[a] growing majority of jurisdictions [that] allow admission of translated testimony in appropriate circumstances assuring its reliability, on the theory that the interpreter serves as an agent of, or a language conduit for, the declarant." *Gomez v. State*, 49 S.W.3d 456, 459 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd). In that case, a prosecution for driving while intoxicated, the defendant told a police officer at the scene of a one-car accident that he had been driving. *Id.* at 457. The defendant made the statement in Spanish, and it was contemporaneously interpreted for the officer by a bystander. *Id.* The court of appeals held that under the circumstances, the interpreter served as "an agent or mere language conduit" for the defendant without introducing an additional layer of hearsay, the translated statement was properly attributed directly to the defendant, and as such, was admissible non-hearsay under rule 801(e)(2). *Id.* at 461.

4

The "language conduit" rule has been stated as follows: "Absent a motive to mislead, distort or some other indication of inaccuracy, when persons speaking different languages rely upon a translator as a conduit for their communication, the statements of the translator should be regarded as the statements of the persons themselves without creating an additional layer of hearsay. Like any other exception to the hearsay rule, the translated statements are admissible—if qualified by an exception to the hearsay rule—without calling the translator as a witness." *State v. Patino*, 502 N.W.2d 601, 610 (Wis. Ct. App. 1993) (citations omitted). In *Gomez*, the court cited four factors often considered when deciding if the conduit theory applies: (1) which party supplied the interpreter; (2) whether the interpreter had any motive to mislead or distort; (3) the interpreter's qualifications and language skill; and (4) whether actions taken subsequent to the conversation were consistent with the statements as translated. *Gomez*, 49 S.W.3d at 459 (citing *United States v. Nazemian*, 948 F.2d 522, 527 (9th Cir. 1991)). *See also United States v. Koskerides*, 877 F.2d 1129, 1135 (2d Cir. 1989) (adopting language conduit rule); *United States v. Cordero*, 18 F.3d 1248, 1253 (5th Cir. 1994) (same); *United States v. Gaytan-Martinez*, 213 F.3d 890, 892-93 (5th Cir. 2000) (considering *Nazemian* factors and deciding that interpreter should not be treated as conduit in that case).

In this cause, the interpreter Momin was not "provided" by either party. He was Shoukat's coworker and was apparently visiting him in the hospital when the officer arrived. Momin had no obvious motive to mislead Officer Benfer regarding Shoukat's statements. As regards Momin's language skills, Benfer testified, "I've worked that area for seven years, and I've been to that store like on shoplifters and stuff like that, but as far as knowing his qualifications on language, I believe he is fluent." The fourth *Nazemian* factor, whether subsequent actions were consistent with

5

the translated statements, is not directly applicable here. We do note, however, that Shoukat's account of the assault and his description of the assailant, as translated by Momin, were consistent with the physical evidence and with the description of the suspect provided by Martin and Cavasoz. We hold that under the circumstances shown by this record, the district court correctly treated the interpreter as a language conduit who did not add an additional level of hearsay.

It has been held that the excited utterance exception to the hearsay rule is firmly rooted, and that such statements bear sufficient indicia of reliability to satisfy the Confrontation Clause. *White v. Illinois*, 502 U.S. 346, 355 n.8 (1992); *Penry v. State*, 903 S.W.2d 715, 751 (Tex. Crim. App. 1995). Since appellant was tried, however, the United States Supreme Court has disapproved the application of "indicia of reliability" analysis to testimonial hearsay. *Crawford v. Washington*, No. 02-9410, 2004 U.S. LEXIS 1838 (U.S. Mar. 8, 2004). In *Crawford*, the Supreme Court held that the admission of testimonial hearsay violates the Confrontation Clause unless the declarant is shown to be unavailable to testify and the defendant had a prior opportunity to cross-examine the declarant. *Id*. at *52-53. The Court left "for another day any effort to spell out a comprehensive definition of 'testimonial,'" but stated that "it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id*. at *53.

We do not believe that Benfer's interview of Shoukat at the hospital on the afternoon of the assault constituted "interrogation" as that term is used in *Crawford*. Therefore, we do not believe that the hearsay in question was testimonial. *Crawford* strongly suggests, but does not hold, that the admissibility of nontestimonial hearsay is outside the scope of the Sixth Amendment. *Id*. at *52. Under either this theory or the "indicia of reliability" theory currently applied to

6

nontestimonial hearsay, the admission of Shoukat's excited utterances to Benfer did not violate the Sixth Amendment.

Finally, if the admission of the challenged hearsay was error, the error was harmless. Martin and Cavasoz identified appellant as the man they saw follow Shoukat out of the store immediately after the assault. Lee testified that appellant came to her apartment that afternoon covered with blood. Appellant had a bloody knife in his possession when detained by the police thirty minutes after the assault. The day after the assault, Shoukat positively identified appellant's photograph as his assailant. The only fact proved by the challenged testimony that was not proved by other testimony was the assailant's motive: Shoukat told Benfer through the interpreter that the assailant stabbed him after he refused to cash a check. If the admission of this fact violated either the rules of evidence or the Confrontation Clause, we are satisfied beyond a reasonable doubt that it did not contribute to the conviction or punishment. Tex. R. App. P. 44.2(a).

The points of error are overruled and the judgment of conviction is affirmed.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices B. A. Smith and Patterson

Affirmed

Filed: May 20, 2004

Publish

7