**Adrian Thaddeus WILSON, Appellant,**

**v.**

**The STATE of Texas, State.**

**No. 2–03–490–CR.**

Court of Appeals of Texas,
Fort Worth.

Nov. 4, 2004.

Daniel L. Young, Fort Worth, for Appellant.

Tim Curry, Crim. Dist. Atty., Charles M. Mallin, Debra Ann Windsor, Lisa Callaghan, Shannon Estrada, Asst. Crim. Dist. Attys., Fort Worth, for State.

Panel F: CAYCE, C.J.; LIVINGSTON and HOLMAN, JJ.

## OPINION

DIXON W. HOLMAN, Justice.

In four issues, Appellant Adrian Thaddeus Wilson appeals his aggravated robbery conviction, claiming that 1) the trial court erred in allowing hearsay testimony, 2) allowing the hearsay testimony was reversible error, 3) his constitutional right to confrontation was violated, and 4) such violation constitutes reversible error. We affirm.

### FACTUAL BACKGROUND

On March 23, 2003, Aron and Kristyle Webb returned home from a friend's birthday party. At 1:30 a.m., Fort Worth Police received a dispatch to the Webbs' home concerning a robbery. Aron told police that a car pulled next to him when he pulled into the driveway and that a man got out asking for directions. The man pulled out a revolver when Aron approached the car to give him directions. He pointed the revolver at Aron and said, "Give me your wallet." Aron threw the cup of soda he was holding in the man's face and took off running. Several days later Aron identified the man during a photospread shown to him by the Fort Worth Police Department.

A few days after the incident, Officer T.G. Shelton saw a car that matched the description given by Aron. Appellant was the driver of that car, and he also matched the physical description given by Aron. Once Appellant realized that Officer Shelton was following him, he stopped the car, put his head out of the window, and asked,

"Why are you following me? You keep following me." The officer then told Appellant to get out of the car, but instead of exiting the car, Appellant accelerated and took off. The car eventually jumped the curb and came to a stop, and Appellant and two others in the car took off running through a field.

Officers M.G. Middleton and B.D. Halford testified that while they were at the scene where the car chase ended, Shanitra Thompson, whom police later learned was Appellant's girlfriend, approached them. Both testified that Thompson appeared to be upset, nervous, and looked like she was about to cry. Thompson inquired about what happened to the car and passengers that were in the car. Initially, she told police the car had been stolen. She then told police that she was the girlfriend of the driver of the car and that his initials were A.D. Thompson gave Appellant's wallet, which contained a piece of paper with her name and number, to Officer Middleton. The police eventually arrested Appellant on April 5, 2003 in Dallas.

### CONFRONTATION CLAUSE

In his first and second issues, Appellant contends that the trial court erred in allowing testimony over his hearsay objections regarding Thompson's statements about the incident and that admitting the statements was reversible error because it affected one of his substantial rights. In his third and fourth issues, Appellant complains that allowing the hearsay testimony violated his constitutional right to confront Thompson and was reversible error. The State responds that Thompson's statements indicate that she was under stress when she spoke to the police and that the trial court properly admitted the statements as excited utterances. Defense counsel objected to the testimony, and the trial court overruled the objection.

■ The admission of hearsay evidence against a criminal defendant implicates the Confrontation Clause of the Sixth Amendment because the defendant is not afforded the opportunity to confront the out-of-court declarant. U.S. CONST. amend. VI. The central point in this case is whether a non-testifying witness' self-initiated statements made to police officers during the investigation of a crime is admissible against the defendant. Therefore, the first issue we must address is not whether Thompson's statements should have been admitted under the rules of evidence but whether the admission violated Appellant's Sixth Amendment right to confrontation. In deciding this constitutional issue, we review the trial court's ruling de novo. *See Muttoni v. State,* 25 S.W.3d 300, 304 (Tex.App.-Austin 2000, no pet.).

At the time of Appellant's trial, a Sixth Amendment challenge to the admissibility of an out-of-court statement against the accused was governed by *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980), *overruled in part by Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 1369, 158 L.Ed.2d 177 (2004). In *Roberts,* to avoid a violation of the Confrontation Clause, hearsay must fall within a firmly rooted hearsay exception or must contain particularized guarantees of trustworthiness such that cross examination would probably add little, if anything, to the reliability of the evidence. *Id.* This standard was applied in several subsequent noteworthy decisions. *See Lilly v. Virginia,* 527 U.S. 116, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999) (holding co-defendant's confession incriminating defendant was not within a firmly rooted exception to the hearsay rule under *Roberts* standard); *see also Idaho v. Wright,* 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990) (holding evidence must be "so trustworthy that adversarial testing would add little to its reliability"). The Supreme Court overruled *Roberts* and set out a new test prohibiting the admission of "testimonial" statements when the witness is unavailable unless the defendant had the opportunity for cross-examination. *Crawford,* 124 S.Ct. at 1369. Now, different analyses apply to nontestimonial hearsay and testimonial hearsay. *See id.* at 1374. The court held that

> [w]here nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law-as does *Roberts,* and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether. Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination.

*Id.; see also Barela v. State,* No. 08–02–00492–CR, 2004 WL 2192604, at *6 (Tex. App.-El Paso Sept.30, 2004, no pet. h.) (not designated for publication). According to *Crawford,* the use of the *Roberts* test has caused rationale of the Supreme Court's cases to depart from the original intent of the framers of the Constitution. 124 S.Ct. at 1359–63. *Crawford* declares that the *Roberts* test is too broad because it applies the same analysis whether the out-of-court statement is testimonial or not and too narrow because it admits ex parte testimonial statements "upon a mere finding of reliability." *Id.* at 1369. *Crawford* contends that the *Roberts* test is inappropriate not only because its results were unpredictable, but also because its application allowed testimony the Confrontation Clause clearly meant to exclude. *Id.* at 1371–72.

■ The threshold question imposed by *Crawford* is whether the proffered out-of-court statement is "testimonial" in nature. *Id.* at 1364. Although the Supreme Court

declined to define "testimonial," it identified certain categories that fall under the heading of testimonial statements, specifically, "ex parte in-court testimony or its functional equivalent, . . . extrajudicial statements contained in formalized testimonial materials, . . . [and] statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Id.* According to *Crawford*, these types of statements bear the closest kinship to the abuses at which the Confrontation Clause was directed. *Id.* If the out-of-court statement is determined to be testimonial in nature, the Sixth Amendment requires that the witness be unavailable and that the defendant had a prior opportunity for cross-examination. *Id.* at 1374.

We turn to the statements made by Thompson at the scene of the incident and address whether her out-of-court statements are testimonial in nature. The *Crawford* analysis applies to out-of-court testimonial statements by a declarant who is not available at trial. Thompson was not called to testify at trial and the objected-to evidence consisted of out-of-court statements. Thus, the only issue is whether the statements at issue were testimonial in nature. We conclude that Thompson's statements were nontestimonial and that *Crawford* has no application here.[1]

A number of factors support this determination. First, Thompson initiated the interaction with the officers; the police did not seek out Thompson. She approached the police at the scene where her car had been wrecked and abandoned. Second, her statements to the police were made in the course of her inquiring about her car and the occupants that were missing from the car. The officers at the scene testified that when Thompson approached them she seemed nervous and visibly upset. She was in no way being interrogated by them, and any questions posed to her by the police were in the context of answering her questions and determining why she was upset. Third, she was not responding to tactically structured police questioning as in *Crawford* where *Miranda* warnings had been issued, but was instead seeking information about her vehicle that was visibly damaged and the whereabouts of the individuals missing from the car. The police were not questioning her regarding known criminal activity and did not have any reason to know her relationship to the driver of the car until she told officers that she was Appellant's girlfriend and handed his wallet to Officer Middleton. Considering all of these facts set out in the record, we conclude that the statements made by Thompson to Officers Middleton and Halford were not made during police interrogation triggering the cross-examination requirement of the Confrontation Clause as interpreted by the court in *Crawford*. *See Cassidy v. State*, 149 S.W.3d 712, 716 (Tex. App.-Austin 2004). Nor did Thompson's statements in any other way constitute a "testimonial" statement. *See id.* Accordingly, we overrule Appellant's third and fourth issues.

### HEARSAY EXCITED UTTERANCE

Because Thompson's statements were nontestimonial in nature, we turn to Appellant's first and second issues to determine if the statements fall within any hearsay

---

1. *See Cassidy v. State*, 149 S.W.3d 712, 716 (Tex.App.-Austin 2004, pet. ref'd) (holding that an interview of a witness by a police officer at a hospital, shortly after an assault, did not constitute interrogation as the term is used in *Crawford*). *But see Wall v. State*, 143 S.W.3d 846, 851 (Tex.App.-Corpus Christi 2004, no pet.) (disagreeing with holding in *Cassidy* in similar fact situation).

exception. *See* Tex.R. Evid. 803(2). In his first and second issues, Appellant contends that the trial court erred in allowing testimony over his hearsay objections regarding Thompson's statements about the incident and that admitting the statements was reversible error because it affected one of his substantial rights.

 Whether an out-of-court statement is admissible under an exception to the general hearsay exclusion rule is a matter within the trial court's discretion. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex.Crim.App.2003). We review a trial court's ruling admitting testimony under an abuse of discretion standard. *Salazar v. State*, 38 S.W.3d 141, 153–54 (Tex.Crim.App.), *cert. denied*, 534 U.S. 855, 122 S.Ct. 127, 151 L.Ed.2d 82 (2001). Therefore, we will reverse only if the trial judge's decision was "so clearly wrong as to lie outside the zone within which reasonable persons might disagree." *See Cantu v. State*, 842 S.W.2d 667, 682 (Tex.Crim.App.1992). The appellate court's role is limited to determining whether the record supports the trial court's ruling. *Coffin v. State*, 885 S.W.2d 140, 149 (Tex.Crim.App.1994).

 The Texas Rules of Evidence define hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tex.R. Evid. 801(d). The rules of evidence provide an exception to the hearsay rule for excited utterances. Tex.R. Evid. 803(2). The definition of an excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." *Id.* The foundation of this exception is the belief that the statements made are involuntary and do not allow the declarant an adequate opportunity to fabricate, ensuring their trustworthiness. *Reyes v. State*,

48 S.W.3d 917, 919 (Tex.App.-Fort Worth 2001, no pet.). In order to determine if a statement qualifies as an excited utterance, the court must determine if the declarant "was still dominated by the emotions, excitement, fear, or pain of the event." *Zuliani*, 97 S.W.3d at 596. The critical factor to look at is whether the surrounding circumstances indicate that the utterance resulted from impulse rather than from reason and reflection. *Id.*

 In the present case, the evidence showed that Thompson made the statements within a short time frame from seeing her abandoned and wrecked car and speaking to officers at the scene. It was clear from the scene that the car had been in some type of accident and that the driver was missing from the car. Both Officers Middleton and Halford testified that when Thompson approached them, she seemed upset, nervous, and looked like she was about to cry. She asked numerous questions about the wrecked car and the individuals that were missing from the car. She initially told police that the car had been stolen and then in the same conversation told them that the driver was her boyfriend and that she had lent it to him. Based on Thompson's relationship to Appellant, her apparent concern for the vehicle and occupants, testimony as to her emotional state when the statements were made, and the conflicting statements made at the scene, the record supports the trial court's admission of Thompson's statements. A reasonable person could conclude that Thompson made the statements while under stress, fear, or excitement from seeing her car wrecked, abandoned, and surrounded by police officers, knowing that she had lent the car to her boyfriend. *See Cantu*, 842 S.W.2d at 682. Because the trial court properly admitted the statements, we overrule Appellant's first and second issues.

## Conclusion

Having overruled Appellant's four issues on appeal, we affirm the trial court's judgment.