# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00014-CR

**Vincent Davis, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT NO. 2030106, HONORABLE MICHAEL LYNCH, JUDGE PRESIDING

## O P I N I O N

Appellant Vincent Davis appeals his conviction for aggravated assault with a deadly weapon. *See* Tex. Pen. Code Ann. § 22.02(a)(2) (West Supp. 2004-05). The jury found appellant guilty. The trial court assessed punishment at twelve years' imprisonment after finding that appellant had been convicted of a prior felony as alleged for the enhancement of punishment.

### Point of Error

In a single point of error, appellant claims that the trial court denied him his constitutional right of confrontation and cross-examination under the Sixth Amendment to the

United States Constitution.[1] Appellant urges that the trial court erred in admitting, over objection, the hearsay out-of-court statements of the alleged complainant made to a police officer near the scene of the offense when the alleged complainant did not testify and her unavailability was never established. Appellant relies upon *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354 (2004).

## Background

The amended indictment alleged that appellant committed aggravated assault with a deadly weapon upon Patricia Ford. Hands and a rope were alleged as deadly weapons. The evidence shows that on January 6, 2003, Paula Weightman came out of her Travis County home that morning to smoke a cigarette. Weightman heard "blood-curdling" screams from the home across the street in the 1000 block of Karen Avenue where Patricia Ford and appellant lived together. She heard Ford scream, "Get out, Get out," heard the sounds of an assault, and heard a male voice yell, "I will show you." Weightman called 911 for police assistance. After the police arrived, Ford came running across the street, trembling and crying. Over objection, Weightman testified that Ford told her, "He tried to kill me."

---

[1] Appellant raises only a federal constitutional right of confrontation issue. He makes no claim of such right under article I, section 10 of the Texas Constitution in his brief. *See* Tex. R. App. P. 38.1(h). Thus, appellant has not claimed that the state constitution provides greater or different protection than the federal constitution. *See Lagrone v. State*, 942 S.W.2d 602, 613 (Tex. Crim. App. 1997); *Wall v. State*, 143 S.W.3d 846, 849 (Tex. App.—Corpus Christi 2004, pet. filed); *Hall v. State*, 139 S.W.3d 418, 421 (Tex. App.—Fort Worth 2004, no pet.). We will not address the state constitutional issue.

2

Austin Police Officers Albert Cortez and Arturo Canizales arrived on the scene within a matter of minutes. After the 911 call, the officers heard a woman screaming and approached the front door of the house from which the screams had come. Cortez saw a woman inside yelling hysterically and holding her hands to her face. The man inside fled to the back of the house. When Cortez entered the house, he told the woman to leave. Officer Cortez located the man, later identified as appellant, in the rear of the house and handcuffed him. A rope was found in the living room. A second man, Lee Hodges, was found in the house. He rented a room from Ford. It was determined that he was not involved in the assault.

Officer Canizales testified that he followed the woman who had exited the house to the front porch of the Weightman home. The woman was identified as Patricia Ford. According to Canizales, Ford was still crying, trembling, and frightened. She bore signs of injuries. There was a knot on the right side of her face, blood on her lips, and a redness around her neck that soon turned into a large bruise.

At this point, appellant objected to further testimony from Canizales on the basis, *inter alia*, that he was being denied the right of confrontation of the witnesses against him. The prosecutor had indicated that Ford would not testify. After a hearing in the jury's absence, the trial court overruled the objection. There was no showing that Ford was unavailable or that appellant had had a prior opportunity to cross-examine Ford.

In the presence of the jury, Officer Canizales testified as to what Ford told him on the Weightman porch. Ford related that she and appellant began arguing about his failure to secure employment, and that he accused her of having a sexual relationship with another man. The

3

argument escalated, and appellant knocked a cup of coffee out of her hands. Ford told Canizales that she moved from room to room to avoid appellant, and that when she tried to leave the house appellant grabbed her shirt, pulled her back into the house, and threw her on the couch. At this point, appellant beat her around the face with his hands, then pressed his thumbs into her eyes and his fingers into her head. Appellant then put his knee into her throat while she was on the couch and told her that he was going to teach her "about talking that way to him." Appellant then threw Ford onto the floor of the living room. As she lay on the floor, appellant took a rope and wrapped it around her neck, put his knee into her back and pulled up on the rope, lifting her torso off the floor. When Ford couldn't breathe, she pleaded with appellant, and he released her to get her inhaler. At this juncture, Ford began screaming. Appellant responded by choking her with his hands. Shortly thereafter, the police officers arrived at the home.

Photographs reflecting Ford's injuries were admitted into evidence. Upon being shown one of the State's exhibits, Officer Canizales agreed that the injury around her neck was consistent with having a rope around her neck.

William Henry Petty, assistant manager of Victim Services at the Austin Police Department, came to the scene on Karen Avenue while Ford was still there. He described Ford's injuries and determined that she needed to be sent to a hospital. He added, without objection, that an officer at the scene had a rope that the officer said had been used and that Ford's neck injury appeared to be consistent with strangulation by a rope. Jeanine Helton, another employee of Victim Services, saw Ford the following day, January 7th. She saw bruising on Ford's face and a very dark

4

bruising at the base of Ford's neck and above the collar bone. Keith Walker, a homicide detective, was qualified as an expert, and testified that strangulation by hands or by ligature could cause death.

Appellant Davis was the only defense witness. His testimony was similar in many respects to what Ford told Officer Canizales. Appellant said that the discussion with Ford began about "me not getting a job"; that Ford began throwing his belongings into the yard which he repeatedly retrieved; and that he started a shouting march with Ford. Appellant explained that when Ford started to throw a cup of coffee on him, he slapped the cup from her hand and hit her with an open hand causing her to fall on the floor. Appellant reported that Ford got up and "ran up on me," that he pushed her "maybe a little too hard," and that she fell on the couch. Appellant admitted that he then pressed his index finger on the side of Ford's head. He was pushing on Ford's temple when "something just said let her go and I just stopped." Appellant acknowledged that he knew what he was doing when he hit Ford and knew it hurt her, but afterwards he knew it was a mistake.

Appellant related that the rope found in the living room was his. He used it to pull his lawn mowing equipment from yard to yard. Appellant denied that he had used the rope on Ford or that he had choked her. He testified that they were just talking when the police officers arrived.

On cross-examination, appellant acknowledged that he had been involved in a romantic relationship with Ford before the incident in question. Appellant stated that, at the time of the assault he was six feet one inch tall and weighed 198 pounds and that Ford was five feet four inches tall and weighed 135 pounds. Appellant was aware that Ford suffered from asthma and diabetes. When appellant was shown State's exhibit no. 2, a photograph of Ford, the record reflects:

Q. And do the injuries in that picture reflect the injuries that you inflicted on her as you described when you struck her?

A. Yes ma'am.

At the conclusion of the guilt/innocence stage of the trial at which Patricia Ford never testified, the jury found appellant guilty.

**Discussion**

The sole issue presented by this appeal is whether appellant was deprived of his federal constitutional right of confrontation of witnesses against him and the inclusive right of cross-examination guaranteed by the Sixth Amendment to the United States Constitution.[2]  Appellant contends that the complainant in this aggravated assault case, Patricia Ford, did not testify, and was not shown to be unavailable to the prosecution, and that there was no prior opportunity for the appellant to cross-examine her.  Appellant urges that the admission of Ford's hearsay statements incriminating him made to Officer Canizales was an unacceptable substitute for the constitutional right of confrontation.  The alleged error was duly preserved for review.  In deciding the constitutional issue presented, we review the trial court's ruling *de novo*.  *Muttoni v. State*, 25 S.W.3d 300, 304 (Tex. App.—Austin 2000, no pet.).

---

[2]  The purpose of confrontation is to ensure reliability by means of the oath, to expose the witness to cross-examination, and to permit the trier of fact to assess credibility. *California v. Green*, 399 U.S. 149, 158 (1970).

The Sixth Amendment right of confrontation is a fundamental right and is applicable to the states by virtue of the Fourteenth Amendment. *Pointer v. State*, 380 U.S. 400, 403 (1965); *Shelby v. State*, 819 S.W.2d 544, 546 (Tex. Crim. App. 1991).[3]

While this appeal was pending,[4] the United States Supreme Court handed down its decision in *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354 (2004), which held that, without exception, *testimonial* hearsay statements of witnesses absent from trial are admissible over a Sixth Amendment Confrontation Clause objection only where the declarant is unavailable and where the defendant has had a prior opportunity to cross-examine the declarant. *Crawford*, 541 U.S. at ___, 124 S. Ct. at 1368-69.

*Crawford* traced the history of the principle of confrontation from ancient Rome through eighteenth century Europe and from the colonial period in this country through the 1791 adoption of the Sixth Amendment and the cases decided under it early on. *Id.*, 541 U.S. at ___, 124 S. Ct. at 1354-63. From the historical background, *Crawford* draws two inferences concerning the Sixth Amendment Confrontation Clause: (1) the "principal evil" targeted by the clause was the civil law's historic practice of using *ex parte* examinations as evidence against the accused; *id.*, 541 U.S.

---

[3] By virtue of the nature of our inquiry, we are guided and bound by the decision and reasoning of the United States Supreme Court. U.S. Const. art. VI, cl. 2; *see also McCulloch v. Maryland*, 17 U.S. (4 Wheat) 316, 427, 4 L. Ed. 579 (1819); *Guzman v. State*, 85 S.W.3d 242, 258 n.24 (Tex. Crim. App. 2002).

[4] The Supreme Court's retroactivity analysis is not an issue here as appellant Davis's case is still on direct appeal. His conviction is not yet final. *See Teague v. Lane*, 489 U.S. 288, 310 (1989); *see generally*, *Beard v. Banks*, ___ U.S. ___, 124 S. Ct. 2504, 2510; 159 L. Ed. 2d 494 (2004).

___; 124 S. Ct. at 1363; and (2) the Framers would not have permitted out-of-court testimonial statements to be admitted into evidence against the accused unless the witness was unavailable and the defendant had had a prior opportunity to cross-examine the witness. *Id*., 541 U.S. at ___, 124 S. Ct. at 1365. The Court concluded that the Confrontation Clause's ultimate goal is to ensure the reliability of evidence and it demands that reliability be assessed in a particular manner: "by testing in the crucible of cross-examination." *Id*., 541 U.S. at ___, 124 S. Ct. at 1370.

As explained in *Brooks v. State*, 132 S.W.3d 702, 707 (Tex. App.—Dallas 2004, pet. ref'd), the threshold question imposed by *Crawford* is whether the proffered out-of-court statement is "testimonial" in nature. *Crawford* held that the Confrontation Clause applies to those who "bear testimony" and it stated that "testimony" is typically "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact. *Crawford*, 541 U.S. at ___, 124 S. Ct. at 1364 (quoting *N. Webster, an American Dictionary of the English Language* (1828)). The Supreme Court declined to spell out a comprehensive definition of "testimonial." *Id*. at 1374. The Court did, however, identify three kinds of statements that could be properly regarded as testimonial: (1) "*ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially," (2) "extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions," and (3) "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later

8

trial." *Id*. at 1364. Statements taken by police officers in the course of interrogations are also testimonial. *Id*.

These examples of testimonial statements are not exclusive. The full definition of testimonial was left to the lower courts at least until the Supreme Court revisits the *Crawford* holding. *Id*. at 1374. The Court did explain that it used the term "interrogation" in "its colloquial, rather than any technical legal sense." *Id*. at 1365 n.4.

The *Crawford* court stressed that whether or not a statement was sworn is not a determinative factor in finding a statement to be testimonial. *Id*. at 1365-66. A statement is more likely to be testimonial if the person who heard, recorded, and produced the out-of-court statement at trial is a government officer. Casual remarks to acquaintances are generally nontestimonial. If the person obtaining the statement is a governmental employee or police officer carrying out an investigation or prosecutional functions, the statement is "testimonial." *Id*. at 1365.

Courts across the nation have been confronted with the grueling job of applying *Crawford* on a case-by-case basis to determine the full definition of "testimonial." Texas courts like others had been accustomed to applying the governing test of *Ohio v. Roberts*, 448 U.S. 56 (1980), where there was a confrontation challenge to the admissibility of out-of-court statements offered against the accused. In *Roberts*, the court discussed the confrontational issues raised by hearsay and set forth the following test:

> In sum, when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a

9

firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.

*Id*. at 66.

The requirement of unavailability in *Roberts* was subsequently limited to hearsay statements made in the course of a prior judicial proceeding. *See White v. Illinois*, 502 U.S. 346, 353-54 (1992).[5] At least, after *Roberts*, the relialibility of offered out-of-court statement was tested when a confrontation challenge was made. Reliability could be demonstrated by one of two means: by the presence of a firmly rooted hearsay exception or by the presence of particularized guarantee of trustworthiness, such that the adversarial testing would be expected to add little, if anything, to the statement's reliability. *Roberts*, 448 U.S. at 66; *see also Lilly v. Virginia*, 527 U.S. 116, 134 (1999); *Idaho v. Wright*, 497 U.S. 805, 820-21 (1990); *Lee v. Illinois*, 476 U.S. 530, 545-46 (1986); *Muttoni*, 25 S.W.3d at 304-06.

The *Roberts* decision acknowledged that the admission of hearsay against a criminal defendant implicates the Confrontation Clause. 448 U.S. at 63. Under the *Roberts* standard, however, the hearsay was admissible against a defendant if it bore sufficient indicia of reliability. *Id*. at 66. In fact, hearsay was deemed per se reliable if it fell within a firmly rooted exception to the

---

[5] The decision in *White v. Illinois*, 512 U.S. 346 (1992), treating the hearsay exception for spontaneous declarations as a "firmly rooted" one for the purpose of applying the reliability test of *Roberts* [448 U.S. 56, 66 (1980)] gave leeway to prosecutors and courts to try cases by introducing statements made in 911 calls and to responding officers (as evidence of the truth of the matter asserted), even if the declarant did not testify.

hearsay rule such as an excited utterance. *See White*, 502 U.S. at 355 n.8; *Guidry v. State*, 9 S.W.3d 133, 149 (Tex. Crim. App. 1999).

*Crawford* abrogated *Roberts* and discarded the "adequate indicia of reliability" test insofar as it applied to "testimonial hearsay." *Crawford*, 124 S. Ct. at 1370-73. "Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." *Id*. at 1374.

The core holding of *Crawford* is that the Confrontation Clause of the Sixth Amendment is a rule of procedure, not of evidence. "If there is one theme that emerges from *Crawford*, it is that the Confrontation Clause confers a powerful and fundamental right that is no longer subsumed by the evidentiary rules governing the admissibility of hearsay statements." *United States v. Comer*, 389 F.3d 662, 679 (6th Cir. 2004). The constitutional requirement that a testimonial statement to be subject to cross-examination in criminal cases "does not evaporate when testimony happens to fall within some broad modern hearsay exception, even if the exception is sufficient in other circumstances." *Crawford*, 124 S. Ct. at 1367 n.7. A testimonial statement that meets the excited utterance exception test and cannot be excluded as hearsay, but this is irrelevant if the Confrontation Clause applies. *Lopez v. State*, 888 So. 2d 693, 697 (Fla. App. 1st Dist. 2004). Mere reliability is not enough to satisfy the Confrontation Clause where the extrajudicial statements are of a testimonial nature. *United States v. Gonzalez-Marichal*, 317 F. Supp. 2d 1200 (S. D. Calif. 2004).

In discussing testimonial and nontestimonial hearsay, the *Crawford* court stated:

> Where testimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the State flexibility in their development of hearsay law—as does *Roberts*, and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether. Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination.

124 S. Ct. at 1374.

Thus, under *Crawford*, the Sixth Amendment Confrontation Clause analysis will usually turn on the question of whether a particular statement is testimonial or nontestimonial in nature. The *Roberts* line of cases seem to be alive and well as to nontestimonial hearsay. *Crawford* strongly suggests but does not hold that the admissibility of nontestimonial hearsay is outside the scope of the Sixth Amendment. 124 S. Ct. at 1373-74.

The Texas Court of Criminal Appeals has only briefly addressed a *Crawford* issue. In *Woods v. State*, 152 S.W.3d 105, 113-114 (Tex. Crim. App. 2004), the court found that a co-defendant's casual "street corner" remarks to acquaintances were admissible as a declaration against penal interest exception to the hearsay rule, Tex. R. Evid. 803(24) and as to the confrontation issue, the remarks were nontestimonial in nature under the holding in *Crawford*.

In determining whether a particular out-of-court hearsay statement is testimonial or nontestimonial in the post-*Crawford* era, courts in Texas and other jurisdictions have reached conflicting decisions under the same or similar circumstances. *Cf. Wall v. State*, 143 S.W.3d 846, 851 (Tex. App.—Corpus Christi 2004, pet. filed) (victim's statement to police shortly after assault testimonial), with *Cassidy v. State*, 147 S.W.3d 712, 716 (Tex. App.—Austin 2004, pet. ref'd)

12

(victim's statement to police at hospital shortly after assault nontestimonial). *Key v. State*, ___ S.W.3d ___ (No. 12-04-00030-CR), 2005 Tex. App. LEXIS 1573 (Tex. App.—Tyler, Feb. 25, 2005, no pet.), held that the statements of the nontestifying victim of an assault made to responding officers at the scene were nontestimonial. *Id*. at 6-7. *Key* cited a number of out-of-state cases to support its conclusion, as well as *Gonzalez v. State*, 155 S.W.3d 603 (Tex. App.—San Antonio 2004, pet. filed), and *Davis v. State*, No. 02-03-305-CR (2005 Tex. App. LEXIS 712) (Tex. App.—Fort Worth 2005, no pet. h.). *Key* concluded that the hearsay statements there resulted from an unstructured interaction between the victim and the police that bore no resemblance to the examples of testimonial hearsay used in *Crawford*. 2005 Tex. App. LEXUS 1573, at *4-5. However, *Crawford* made clear the examples given were not exclusive. *Key* did not end its reasoning there. *Key* supported its conclusion by finding that the excited utterance exception to the hearsay rule had been satisfied and, thus, as a matter of law, the statements were nontestimonial. *Id*.

*Spencer v. State*, No. 14-04-00059-CR, 2005 Tex. App. LEXIS 3162 (Tex. App.—Houston [14th Dist.] April 28, 2005, confronted a similar issue as in *Key* and reached the same conclusion. However, *Spencer* expressly disagreed with *Key*'s conclusion that all excited utterances are non-testimonial statements, 2005 Tex. App. LEXIS 3162, at *9.

In *Wilson v. State*, 151 S.W.3d 694, 696-98 (Tex. App.—Fort Worth 2004, pet. filed), the Court found the unstructured interaction between a nontestifying victim and police at the scene of a car wreck was nontestimonial. The court of appeals first independently reached this conclusion before discussing if the same statements were also admissible under the excited utterance exception to the hearsay rule. Tex. R. Evid. 803(2).

13

There are a number of cases contrary to *Key*. *See Stencil v. United* States, 866 A.2d 799, 809 (P. C. Ct. App. 2005) ("Some excited utterances are testimonial, and others are not, depending on the circumstances."); *Lopez*, 888 So. 2d at 697 (statement to responding officer testimonial even though it was excited utterance); *People v. Victory*, 819 N.E.2d 311 (Ill. App. 3d Dist. 2004) (victim's statements to police officer at scene testimonial under circumstances); *Moody v. State*, 594 S.E.2d 350 (Ga. 2004) (victim's statement to investigating officer at scene shortly after event testimonial); *Lee v. State*, 143 S.W.3d 565, 568-71 (Tex. App.—Dallas 2004, pet. filed) (nontestifying co-defendant's out-of-court statements to police officers at scene of automobile stop testimonial); *United States v. Neilson*, 371 F.3d 574 (9th Cir. 2004) (statement by defendant's girlfriend to an officer during execution of search warrant testimonial); *People v. Ruiz*, 2004 Cal. App. Unpub. LEXIS 9691, at *28 (Cal. App. 2d Dist. Oct. 26, 2004) (unpublished) (statement to responding officer testimonial noting that police officers are trained to obtain statements for potential use in litigation when responding to potential domestic violence situations); *People v. Sisanath*, 13 Cal. Rptr. 3d 753 (Cal. App. 2004) (alleged victim's statement to responding officer testimonial). Significantly, the Supreme Court has vacated and remanded a case involving "excited utterances" to a police officer responding to the scene of a crime for further consideration in light of *Crawford*. *Siler v. Ohio*, 125 S. Ct. 671 (2004), GVD'ing *State v. Siler*, 2003 Ohio 5749, 2003 Ohio App. LEXIS 5091 (Ohio Ct. App. Oct. 24, 2003).

In *Samarron v. State*, 150 S.W.3d 701 (Tex. App.—San Antonio 2004, pet. filed), the witness to a murder made no statement at the scene but gave a written statement at the police station. The witness did not testify. His written statement was admitted as an "excited utterance."

14

The court of appeals held that the statement was "testimonial" and that it was offered in violation of the Confrontation Clause. *Id*. at 705-08. The error was not harmless. *Id*. at 708.[6]

In *Hammon v. State*, 809 N.E.2d 945 (Ind. Ct. App. 2004), the court found difficulty in characterizing any "excited utterance" exception to the hearsay rule as "testimonial" within the meaning of *Crawford*. The court stated:

> We further note that the very concept of an "excited utterance" is such that it is difficult to perceive how such a statement could ever be "testimonial." "The underlying rationale of the excited utterance exception is that such a declaration from one who has recently suffered an overpowering experience is likely to be truthful." *Hardiman v. State*, 726 N.E.2d 1201, 1204 (Ind. 2000). To be admissible, an excited utterance "must be unrehearsed and made while still under the stress of excitement from the startling event." *Id*. "The heart of the inquiry is whether the declarants had the time for reflection and deliberation." *Id*. An unrehearsed statement made without time for reflection or deliberation, as required to be an "excited utterance," is not "testimonial" in that such a statement, by definition, has not been made in contemplation of its use in a trial. *See Crawford*, 124 S. Ct. at 1364.

*Hammon*, 809 N.E.2d at 952-53; *see also Fowler v. State*, 809 N.E.2d 960, 964 (Ind. Ct. App. 2004), *transfer granted*, 2004 Ind. LEXIS 1030 (Ind. Dec. 9, 2004).

Other courts have rejected the *Hammon-Fowler* analysis as being more restrictive than contemplated by the Supreme Court in *Crawford. See People v. Kilday*, 20 Cal. Rptr. 161, 173 n.9, 123 Cal. App. 406, 418, *review granted*, 2005 Cal. LEXIS 565 (Cal. Jan. 19, 2005). In *Lopez*

---

[6] *See Jahanian v. State*, 145 S.W.3d 346, 350 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (finding that written statement given during police investigation after witness became suspect was testimonial); see also *Gutierrez v. State*, 150 S.W.3d 827, 830 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (holding videotaped statement testimonial).

*v. State*, 888 So. 2d at 699, the court disagreed with the *Hammon-Fowler* approach that excited

utterances can never be testimonial.  The court stated:

> While this argument has some appeal at least on the surface, we do not think that excited utterances can be automatically excluded from the class of testimonial statements.
>
> In our view, the findings necessary to support a conclusion that a statement was an excited utterance do not conflict with those that are necessary to support a conclusion that it was testimonial.  A statement made in the excitement of a startling event is likely to be more reliable given the fact that the declarant had little time to make up a story.  But, under *Crawford*, reliability has no bearing on the question of whether a statement was testimonial.  Some testimonial statements are reliable and others are not.

After discussing cases involving statements by declarants to family members or

friends, the *Lopez* court stated:

> In contrast, a startled person who identifies a suspect in a statement made to a police officer at the scene of a crime surely knows that the statement is a form of accusation that will be used against the suspect.  In this situation, the statement does not lose its character as a testimonial statement merely because the declarant was excited at the time it was made.
>
> These principles lead us to conclude that the statement at issue was a testimonial statement.  While it is true that Ruiz was nervous and speaking rapidly, he surely must have expected that the statement he made to Officer Gaston might be used in court against the defendant.  He knew that Gaston was a policeman who was on the scene in an official capacity to investigate a reported crime.  Even in his excitement, Ruiz knew that he was making a formal report of the incident and that his report would be used against the defendant.

*Id*. at 699-700.

The instant case was one of the domestic violence variety where the complainant did not testify. It has been estimated that between eighty and ninety percent of domestic violence complainants recant their accusations or refuse to cooperate with prosecutors. *See* Tom Lininger, *Evidentiary Issues in Federal Prosecution of Violence Against Women*, 36 Ind. L. Rev. 687, 709 n.76 (2003). Thus, prosecutors try many domestic violence cases without the complainant's testimony. They often rely upon evidence of excited utterances or other hearsay exceptions. *Cf. People v. Moscat*, 3 Misc 3d 739, 777 N.Y.S.2d 875, 878 (N.Y. Crim. Court 2004) ("because complainants in domestic violence cases often do not appear for trial, prosecutors have in recent years tried to fashion 'victim less' prosecutions"). The proper interpretation of *Crawford* can have a great impact upon trials in this area.

In the instant case, there can be little question from the facts that the complainant's statements to Officer Canizales shortly after the event were admissible under the "excited utterances" exception to the hearsay rule. *See* Tex. R. Evid. 803(2). The complainant Ford was crying, sobbing, and appeared hysterical at the time. But the fact that evidence is admissible under an excited utterance hearsay exception does not mean that it is *ipso facto* nontestimonial hearsay outside the scope of the Confrontation Clause and admissible into evidence. Each case must be examined on its facts to determine if the evidence is testimonial and controlled by *Crawford*.

Officers Cortez and Canizales responded to a 911 call. When they arrived at the scene, they could easily be characterized as "responding officers." How long did that label apply? The officers found appellant and Ford in a house from which they heard screams. Ford left the house at Cortez's instructions. As she did, she stated to the officers: "[H]e tried to kill me," a form of

accusation and yet a plea for assistance. Appellant was taken into custody. It was determined the other man in the house had nothing to do with the assault. Ford had reached the porch of a neighbor's house across the street. The scene was apparently secured. Officer Cortez related that Officer Canizales went across the street to get Ford's "side of the story." Canizales testified that his purpose in "interviewing" Ford was to determine what happened and who committed the assault. He further stated that the "story he got from her was the result of questioning." At one point, however, he stated that he simply asked what happened and she told him. Had Canizales at this point become an investigating officer at the scene? From the record, we know that at this time Canizales took photographs of Ford which were introduced into evidence. Canizales also made an offense report, as he was trained and required to make, that was used at trial to refresh his memory as to the details of what Ford told him.[7] Frequent references during trial were made to page six of the offense report. Other employees of the police department were summoned to the scene as well as an ambulance—steps normally taken under similar circumstances, not only to assist the complainant but with an eye to potential prosecution.

The oral statements made by Ford to the uniformed Officer Canizales identified appellant and then, in a series of accusations against appellant, detailed blow by blow the assault made upon her. Surely, a reasonable 51-year-old declarant like Ford would have known that her accusations made to a uniformed police officer would be passed on to prosecutorial authorities to be used against appellant. Ford's statements may serve either or both of two primary objectives—to gain immediate official assistance in terminating an exigent situation and to provide information to

---

[7] It is not clear from the record whether Officer Canizales took notes while talking to Ford.

18

aid investigation and possible prosecution arising from the situation. Merely because a declarant is excited, the statements made do not lose their character as testimonial statements subject to the Confrontation Clause.

In the instant case, it is difficult to draw a definitive line between testimonial and nontestimonial hearsay evidence developed in this pre-*Crawford* trial in order to reach the proper disposition of this appeal. We find that we do not have to do so.

**Conclusion**

If, in the instant case, the objected-to hearsay was nontestimonial, then no Confrontation Clause error is presented. If, on the other hand, the hearsay was testimonial, then *Crawford* applies, and constitutional error occurred. A Confrontation Clause violation is subject to a harmless error analyses. *See Lilly v. Virginia*, 527 U.S. 116, 140 (1999); *Coy v. Iowa*, 487 U.S. 1012, 1021 (1988). We must reverse the conviction when Confrontation Clause error is presented unless we can determine beyond a reasonable doubt that the error did not contribute to the conviction. *See Chapman v. California*, 386 U.S. 18, 24 (1967); *Mendez v. State*, 56 S.W.3d 880, 893 (Tex. App.—Austin 2001, pet. ref'd); *see also* Tex. R. App. P. 44.2(a). In *Shelby v. State*, 819 S.W.2d 544, 547 (Tex. Crim. App. 1991), the Texas Court of Criminal Appeals adopted the Supreme Court's analysis in *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986), for assessing harm in Confrontation Clause cases. *See also Samarron*, 150 S.W.3d at 707; *DeLaRosa v. State*, 961 S.W.2d 495, 499 (Tex. App.—San Antonio 1997, no pet.) (applying *Van Arsdall* factors). The *Van Arsdall* analysis is a three-pronged test. First, the reviewing court must assume that the damaging potential of the cross-examination was fully realized. Second, with that assumption in mind, the court must

review the error in connection with the following factors: the extent for cross-examination otherwise permitted; the importance of the witness's testimony in the State's case; whether the testimony was cumulative; the presence or absence of evidence corroborating or contradicting material points of the witness's testimony; and the overall strength of the State's case. Finally, in light of the first two prongs, the court determines if the error was harmless beyond a reasonable doubt. *Van Arsdall*, 475 U.S. at 684; *see also Shelby*, 819 S.W.2d at 547; *Samarron*, 150 S.W.3d at 707.[8]

In applying the *Van Arsdall* factors to the facts of the instant case, we find that the hearsay testimony involved was vital to the State's case. Without it, the State could not have established the elements of the offense. However, appellant made a judicial confession corroborating much of the declarant's statements to Officer Canizales. Appellant confirmed the

---

[8] The *Van Arsdall* factors in the second prong of the analyses were developed in light of the particular facts there presented. *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986). Like factors in other contexts, the *Van Arsdall* factors do not always present a "one shoe fits all" analysis easily applied to every case.

In *Hale v. State*, 139 S.W.3d 418, 422 (Tex. App.—Fort Worth 2004, pet. filed), the court recognized the *Van Arsdall* factors but did not apply them because there was no trial, only a guilty plea before the trial court. The *Hale* court reversed the aggravated sexual assault convictions in the light of *Crawford v. Washington*, 124 S. Ct. 1354 (2004), because the trial court erred in denying a motion to exclude the written testimonial statement of an accomplice who refused to testify at trial. After the pretrial ruling, appellant entered pleas of guilty. The Court of Appeals could not determine beyond a reasonable doubt from the record before it that the pretrial ruling did not contribute to the guilty pleas and the resulting convictions. The causes were reversed and remanded. *Id*. at 422.

In *Scott v. State*, No. 03-03-00109-CR, 2005 Tex. App. LEXIS 2168 (Tex. App.—Austin March 24, 2005), a capital murder case, this Court found the trial court erred in admitting the written testimonial statement of a non-testifying co-defendant over a Confrontation Clause objection. The majority found the error harmless in an analysis under Rule 44.2(a) of the Texas Rules of Appellate Procedure (incorporating the holding in *Chapman v. California*, 380 U.S. 18, 24 (1967)), and the factors set forth in *Harris v. State*, 790 S.W.2d 568, 587 (Tex. Crim. App. 1989); *Scott*, 2005 Tex. App. LEXIS 2168, at *52-69. There was no reliance upon *Van Arsdall*.

20

background evidence of his relationship with Ford, the declarant. He admitted that he started the shouting match and assaulted the declarant and acknowledged that he inflicted the injuries shown in a photograph of the declarant. While, appellant's version of the assault did not exactly match that of the declarant as revealed by Officer Canizales's testimony, the evidence clearly supported the general verdict of the jury.

If the complained-of hearsay was testimonial in nature, applying the *Van Arsdall* analyses, we conclude beyond a reasonable doubt that the error did not contribute to the conviction or punishment assessed. There is no reasonable likelihood that the error, if any, materially affected the jury's deliberations. *See Westbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000).

Appellant's sole point of error is overruled. The judgment is affirmed.

_____

John F. Onion, Jr., Justice

Before Chief Justice Law, Justices Puryear and Onion[*]

Affirmed

Filed: May 19, 2005

Publish

---

[*] Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).