COURT OF 
APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-205-CR
 
  
ELYSEE 
MARC                                                                      APPELLANT
  
V.
  
THE 
STATE OF TEXAS                                                                  STATE
 
  
------------
 
FROM 
CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY
 
------------
 
OPINION
 
------------
INTRODUCTION
        Elysee 
Marc appeals from his conviction for aggravated sexual assault and sentence of 
ninety-nine years’ confinement.  In seven issues, appellant complains 
that the evidence is factually insufficient to support his conviction and that 
the trial court erred by admitting certain exhibits and hearsay into evidence at 
the guilt-innocence and punishment phases of trial.  We affirm.
FACTS
        While 
driving in his car, appellant picked up Y.D., a convicted prostitute, and asked 
her to perform sexual favors for him at his apartment in exchange for fifty 
dollars.  As appellant was driving Y.D. to his apartment, she became 
nervous and asked appellant to take her back to where he had picked her 
up.  Appellant refused, took out a box cutter, and held it to Y.D.’s 
throat.
        When 
they reached appellant’s apartment, he told Y.D. that if she screamed, he 
would kill her. Once inside the apartment, appellant told her to take off her 
clothes.  She did, and appellant proceeded to have intercourse with 
her.  The intercourse was very rough, and Y.D. complained that appellant 
was hurting her.  He ignored her and continued. During intercourse, she 
told him that he had not paid her.  Appellant paused to give her eight or 
ten dollars out of his pocket, which he later took back.  He started 
intercourse with her again. Y.D. pushed appellant off of her because he was 
being too rough, and appellant pulled out the box cutter and told her he was 
going to finish what he was doing.  After appellant was done, Y.D. got 
dressed and appellant agreed to drive her home.  But after they drove a few 
blocks, he stopped and told her to get out.
        Y.D. 
went to a nearby pay phone, called the police, and reported that she had been 
raped.  When the officer arrived, she took him to appellant’s apartment 
and identified his car.  Y.D. also submitted to a hospital rape exam.  
At trial, the parties stipulated that DNA analysis of the semen found in Y.D. 
came from appellant.
        The 
jury found appellant guilty of aggravated sexual assault.  At sentencing, 
the State introduced evidence that appellant had committed six other rapes and 
an attempted rape with a deadly weapon.  All victims except one were 
prostitutes.
FACTUAL SUFFICIENCY
        In 
his first issue, appellant complains that the evidence is factually insufficient 
to support his conviction.
Standard of Review
        In 
reviewing the factual sufficiency of the evidence to support a conviction, the 
appellate court is to view all the evidence in a neutral light, favoring neither 
party.  Zuniga v. State, 144 S.W.3d 477, 481 (Tex. Crim. App. 
2004).  The only question to be answered in a factual sufficiency review is 
whether, considering the evidence in a neutral light, the fact finder was 
rationally justified in finding guilt beyond a reasonable doubt.  Id. 
at 484.  There are two ways evidence may be factually insufficient:  
(1) the evidence supporting the verdict or judgment, considered by itself, is 
too weak to support the finding of guilt beyond a reasonable doubt; or (2) when 
there is evidence both supporting and contradicting the verdict or judgment, 
weighing all of the evidence, the contrary evidence is so strong that guilt 
cannot be proven beyond a reasonable doubt.  Id. at 484-85.  
“This standard acknowledges that evidence of guilt can ‘preponderate’ in 
favor of conviction but still be insufficient to prove the elements of the crime 
beyond a reasonable doubt.”  Id. at 485.  In other words, 
evidence supporting a guilty finding can outweigh the contrary proof but still 
be insufficient to prove the elements of an offense beyond a reasonable doubt. Id.
        In 
performing a factual sufficiency review, we are to give deference to the fact 
finder’s determinations, including determinations involving the credibility 
and demeanor of witnesses.  Id. at 481; Cain v. State, 958 
S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment 
for that of the fact finder.  Zuniga, 144 S.W.3d at 482.
        A 
proper factual sufficiency review requires an examination of all the 
evidence.  Id. at 484, 486-87. An opinion addressing factual 
sufficiency must include a discussion of the most important and relevant 
evidence that supports the appellant’s complaint on appeal.  Sims v. 
State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).
Discussion
        Appellant 
focuses the entirety of his discussion of factual insufficiency on Y.D.’s 
veracity and inconsistent statements and conflicting testimony on the issue of 
consent.
Veracity
        Appellant 
points out that Y.D.’s veracity was “highly suspect” because she was a 
prostitute, a drug addict, and had been convicted in federal and state court for 
a variety of theft and felony offenses.  Appellant contends that Y.D.’s 
credibility was further undermined by the fact that she lived at a crack house 
and prostituted herself to get money for illegal drugs.
        Y.D. 
admitted on cross-examination that she had stolen from her customers in the past 
and that it was not beneath her to “lie and cheat and steal.”  
Appellant notes that Y.D. admitted to lying to police during the initial 
investigation by telling them that she had merely asked appellant for a ride to 
a friend’s house in order to avoid getting in trouble for prostitution.
        The 
State responds, stating that Y.D.’s criminal history, drug use, and occupation 
as a prostitute were known to the jury from the beginning of the State’s 
case.  Immediately upon taking the witness stand, Y.D. admitted that she 
was unemployed, addicted to crack cocaine, smoked several “rocks” a day, 
earned money as a prostitute, and had numerous criminal convictions.[1]   According to Officer Timothy Trull, who took 
the initial police report on the sexual assault, one of the first things Y.D. 
told him was that she was a prostitute.  The detective assigned to Y.D.’s 
case testified that he knew Y.D. was a prostitute and that, after interviewing 
her, he dropped her off at a known crack house.
        In 
addition to hearing Y.D.’s testimony, the jury also heard the testimony of two 
police officers describing Y.D.’s emotional state after the assault.  
Officer Trull testified that when he met Y.D. at the convenience store where she 
had called 911, Y.D. was crying and appeared “really upset.”  Detective 
Spivey, who had known Y.D. for a long time, met Y.D. at the hospital where she 
received her rape exam.  Detective Spivey noted that Y.D. was crying and 
more upset than he had ever seen her before. Y.D. testified that although she 
had been raped in the past, this incident was different because no one had ever 
threatened to kill her before.  This incident was the only time Y.D. made a 
sexual assault report to the police.
        As 
the exclusive judges of the facts, the credibility of the witnesses, and the 
weight to be given their testimony, a jury may believe or disbelieve all or any 
part of a witness's testimony.  Page v. State, 125 S.W.3d 640, 646 
(Tex. App.—Houston [1st Dist.] 2003, pet. ref’d).  Based upon Y.D.’s 
candid testimony and the corroborating testimony of the two police officers, the 
jury could have chosen to believe Y.D. despite her background and personal 
history.
Inconsistent 
Statements
        Next, 
appellant complains that the evidence is factually insufficient because Y.D. 
made inconsistent statements at trial. First, he points to the inconsistent 
references to the weapon as a “knife,” a “box cutter,” and a 
“razor.”  Officer Trull testified that Y.D. referred to the weapon as a 
“knife” when first reporting the assault but later referred to it as a 
“razor.”  Ultimately, Y.D. explained during her testimony that a 
“razor” is the street term for a “box cutter.”  Accordingly, 
despite the different terms used, the jury could have concluded that appellant 
used a box cutter during the offense.
        Appellant 
also points out that Y.D. gave conflicting testimony regarding a man she saw 
coming out of an apartment neighboring appellant’s apartment. Officer Trull 
testified that Y.D. told him she saw the neighbor when she and appellant first 
arrived at his apartment.  At trial, Y.D. testified that she saw the 
neighbor as she and appellant were leaving his apartment.  In light of the 
fact that Officer Trull testified that Y.D. was upset and crying when she 
initially told him what had happened to her, the jury could have believed that 
Y.D. was telling the truth about the assault despite this inconsistency.
Lack 
of Consent
        Lastly, 
appellant complains that the evidence was factually insufficient to show lack of 
consent to sex on the part of Y.D.  First, he argues that Y.D. gave 
inconsistent testimony as to whether she told appellant to stop having 
intercourse with her.  On both direct and cross-examination, Y.D. testified 
that she told appellant to stop.  First, she stated, “He had gave me some 
money because I had told him to stop, and I don’t know how long [the 
intercourse] happened but I eventually got him up off me.”   
Appellant contends that the above statement contradicts the following testimony:
  
[PROSECUTOR] Is that what you were saying, he was pulling your hair?
 
        [Y.D.] 
No, the braids -- he pulled the braids out.
 
        Q. 
He pulled the braids out?

        A. 
Yeah, he pulled them aloose.

        Q. 
We are talking this was your real hair?
 
A. 
Yeah, he pulled them aloose. It wasn't no braids. They was all loose in all of 
them.

        Q. 
Did that hurt?

        A. 
Yeah.

        Q. 
Did you ever tell him stop?
 
A. 
Yeah, I did. Yes, sir.

        Q. 
How did you tell him that?
 
A. 
Actually, I didn't tell him to stop. I just told him that he was hurting me, 
that he needed to slow down.  I said, don't pull my hair so hard because 
you are hurting me.  He wasn't listening.  He just kept on doing it.

 
While 
appellant contends the above question of whether Y.D. asked him to stop relates 
to intercourse, the jury was free to conclude that the question related only to 
whether she asked appellant to stop pulling her hair.  Thus, even though 
the above statements are somewhat ambiguous and open to interpretation, they are 
not dispositive on the issue of consent.
        Next, 
appellant contends that Y.D. participated in sexual intercourse with him in 
exchange for payment, not because she feared for her safety.  Appellant 
points to Y.D.’s interview with Detective Spivey in which she stated that she 
was not scared of appellant.  However, appellant takes Y.D.’s statement 
out of context because she actually stated that she was not scared of appellant, 
“but he had a razor.”  Y.D. explained on redirect examination that she 
was not afraid of appellant but was afraid of the razor he carried.
        Although 
the record shows that Y.D. at times appeared motivated by payment, it supports 
the jury’s finding that she was forced to participate in sexual intercourse 
with appellant because he threatened her.  For example, appellant points to 
the fact that Y.D. pushed appellant off of her during sex because he was hurting 
her as evidence that Y.D. was not afraid of appellant.  But appellant’s 
argument ignores the fact that Y.D. was forced by appellant to continue having 
sex with him because he pulled the box cutter out of his pants, showed it to 
her, and told her that he was going to finish what he was doing.  Y.D. 
testified that she only let him continue because she was afraid appellant would 
cut her with the “razor.”
        Appellant 
also argues that Y.D.’s statement to him in his apartment that she wanted to 
“get it over with” indicated that the sex was consensual.  However, the 
jury could have interpreted the statement to mean that Y.D. knew what was going 
to happen to her and did not want to prolong it.  Appellant also points to 
the fact that he did not “beat up” Y.D. as evidence that the sex was 
consensual.  However, the record reveals that appellant held a box cutter 
to her throat while driving her to his apartment; when at the apartment, 
threatened to kill her if she screamed; threatened her with the box cutter 
during intercourse, telling her he was going to finish what he was doing; 
treated her roughly by pulling her hair and causing her pain; and, ultimately, 
refused to stop although Y.D. repeatedly told him that he was hurting her.
        The 
penal code provides that a person commits the offense of aggravated sexual 
assault “if the person . . . intentionally or knowingly . . . (i) causes the 
penetration of the anus or sexual organ of another person by any means, without 
that person’s consent; [or] (ii) causes the penetration of the mouth of 
another person by the sexual organ of the actor, without that person's 
consent.” Tex. Penal Code Ann. § 22.021(a)(1) 
(Vernon Supp. 2004-05).  Our review of the record reveals evidence showing 
that after initially agreeing to go to appellant’s apartment, Y.D. changed her 
mind and asked appellant to take her back to where he had picked her up; 
appellant refused, pulled out a box cutter, and held it to her throat.  
When they arrived at the apartment, it was undisputed that appellant had 
intercourse vaginally and orally with Y.D.  While having intercourse, 
appellant threatened her with a weapon in order to force her to continue having 
sex with him and refused to stop after she repeatedly told him that he was 
hurting her.
        The 
evidence we have detailed is not too weak to support the jury’s finding of 
guilt, nor is the evidence contrary to the finding so strong that guilt cannot 
be proven beyond a reasonable doubt.  See Zuniga, 144 S.W.3d at 
485.  Accordingly, we hold that the evidence was factually sufficient to 
support the jury’s verdict.  Appellant’s first issue is overruled.
ADMISSION OF EVIDENCE
        In 
his remaining issues, appellant complains that the trial court erred by 
admitting various exhibits and certain testimony.
Standard of Review
        The 
admission of evidence is a matter within the discretion of the trial court. Montgomery 
v. State, 810 S.W.2d 372, 378 (Tex. Crim. App. 1990).  As long as the 
trial court’s ruling admitting the evidence was within the “zone of 
reasonable disagreement,” there is no abuse of discretion and the trial 
court’s ruling will be upheld.  Rachal v. State, 917 S.W.2d 799, 
807 (Tex. Crim. App. 1996).
Witness Statement
        In 
appellant’s second and third issues, he complains that the trial court erred 
by admitting exhibits containing his written statement to police because they 
are inadmissible under Texas Rules of Evidence 404(b) and 403.  The 
exhibits at issue are copies of a written statement made by appellant while in 
police custody. Appellant’s statement is as follows:[2]
  
My partents are going through a divorce pressure builds up causes me to durink.  
Makes me mad and drepressed.  So I start looking for something to get my 
mind off of things thats when I get in trouble and start durinking and pick up 
prostutes.  When I pick them up I’m arerend mad I told one of them if she 
try anything to hurt me I wood hurt her with a boxcuter.  And a nother one 
I lift with her purse still in my car.
   
Appellant’s 
trial counsel objected under rule 404(b), arguing that the statement is not a 
confession and it is unclear whether the reference to the box cutter refers to 
the incident with Y.D. or whether it refers to an incident with a different 
prostitute.  Counsel also stated that the exhibit was “only being 
admitted for the purpose of inflaming the jury and making them speculate that 
the box cutter that is being spoken of in here . . . [is] the same box cutter 
that was used in a specific -- in this specific case[;] that is not what this 
indicates.”  The State responded by arguing that the statement is 
relevant to appellant’s motive and intent and it corroborates Y.D.’s 
testimony.
        During 
the discussion regarding the admissibility of the statement, the trial court 
indicated that it was concerned about the other extraneous offenses mentioned in 
the statement, i.e., getting drunk and picking up prostitutes, not just Y.D. In 
clarifying his objection, defense counsel stated that his objection is
that 
they [the State] intend to prove that that box cutter statement goes directly to 
that young lady [Y.D.].  And I say that is making the jury leap[,] 
speculate[,] and is prejudicial to my client for them to take that position that 
that statement that he made there, which is exculpatory, is trying to imply that 
that box cutter that he was talking about is the same box cutter being used here 
in this court.

The 
State also informed the trial court that appellant made the statement after he 
was arrested and questioned about Y.D.’s case; thus, appellant’s references 
to the box cutter went directly to the incident with Y.D.
        Rule 
404(b) prohibits the admission of evidence of “other crimes, wrongs or acts” 
in a criminal case to prove that the defendant acted in conformity with his 
character to commit crimes. Tex. R. Evid. 404(b).  Once the 
opponent objects to such evidence, it is incumbent upon the proponent of the 
evidence to show that the evidence has relevance apart from its tendency to 
prove the defendant acted in conformity with his character.  Montgomery, 
810 S.W.2d at 388 (op. on reh’g).  If the trial court determines the 
evidence has no relevance apart from character conformity, then the evidence is 
inadmissible.  Id. “However, the proponent of the evidence may 
convince the court the evidence is relevant to establish some elemental fact, 
such as identity or intent; that it tends to establish some evidentiary fact, 
such as motive, opportunity or preparation, leading inferentially to an 
elemental fact; or that it rebuts a defensive theory.“  Massey v. 
State, 933 S.W.2d 582, 586 (Tex. App.—Houston [1st Dist.] 1996, no pet.).
        “‘Relevant 
evidence' means evidence having any tendency to make the existence of any fact 
that is of consequence to the determination of the action more probable or less 
probable than it would be without the evidence.”  Tex. R. Evid. 401.  Here, the State 
argues that the written statement was relevant to corroborate Y.D.’s testimony 
that appellant threatened her with a box cutter and went to the issue of 
consent. The trial court admitted the statement because
  
it basically states that [appellant engaged] in drinking and picking up 
prostitutes, and also it states in here about the box cutter, since the box 
cutter has been related to this particular case, and since he was arrested to 
-- pertaining to this particular case, it is [the trial court’s] opinion 
that he is talking about this particular case. [Emphasis added.]
 
 
Thus, 
it appears the trial court believed that the portion of the statement in which 
appellant admitted to threatening a prostitute with a box cutter referred to 
Y.D. and corroborated her testimony. No evidence was admitted at guilt-innocence 
about the other extraneous acts revealed in the statement, i.e., drinking, 
getting mad, and picking up other prostitutes. Accordingly, we hold that the 
trial court did not abuse its discretion in admitting the statement under rule 
404(b) both to corroborate Y.D.’s testimony and because it was relevant to the 
issue of consent.
        Next, 
we must determine whether the trial court abused its discretion in admitting the 
evidence under rule 403. See Montgomery, 810 S.W.2d at 388. Rule 403 
allows the admission of relevant evidence unless its probative value is 
substantially outweighed by the danger of unfair prejudice, confusion, undue 
delay, or the unnecessary presentation of cumulative evidence. Tex. R. Evid. 403. Rule 403 favors 
admissibility of relevant evidence, and the presumption is that relevant 
evidence will be more probative than prejudicial. Montgomery, 810 S.W.2d 
at 389. In Santellan v. State, 939 S.W.2d 155 (Tex. Crim. App. 1997), the 
court of criminal appeals restated the factors discussed in Montgomery 
that should go into the balancing test:
  
(1) how compellingly the extraneous offense evidence serves to make a fact of 
consequence more or less probable—a factor which is related to the strength of 
the evidence presented by the proponent to show the defendant in fact committed 
the extraneous offense;
  
(2) 
the potential the other offense evidence has to impress the jury “in some 
irrational but nevertheless indelible way”;
  
(3) 
the time the proponent will need to develop the evidence, during which the jury 
will be distracted from consideration of the indicted offense; [and]
  
(4) 
the force of the proponent's need for this evidence to prove a fact of 
consequence, i.e., does the proponent have other probative evidence available to 
him to help establish this fact, and is this fact related to an issue in 
dispute.
 
 
Id. 
at 169 (footnote omitted).
        Here, 
appellant’s statement about the box cutter corroborates Y.D.’s testimony 
about her lack of consent and thus makes it more probable that she did not 
consent to sex with appellant. As appellant notes in his earlier points, 
Y.D.’s criminal history and drug use did not make her the ideal witness. For 
that same reason, the State had a strong need for the evidence. Although the 
police found a box cutter at appellant’s apartment, the jury could have 
concluded that appellant’s owning a box cutter was not unusual and that Y.D. 
could have seen it when she was at appellant’s apartment. Thus, appellant’s 
statement strengthened the State’s case on the consent issue.
        In 
addition, while the acts described in appellant’s statement were probably 
distasteful to at least some, if not all, of the jury members, they are not any 
more inflammatory than the charged offense. In fact, appellant’s statement 
about the box cutter purports to be exculpatory by implying that he was 
responding to a threat. Moreover, the amount of time the State spent developing 
testimony about the statement was very small compared to the rest of the record. 
And the prosecutors did not unduly emphasize the statement in their closing 
arguments; the bulk of their arguments focused on Y.D. and her testimony. Thus, 
we conclude that the trial court did not abuse its discretion in admitting 
evidence of appellant’s statement under rule 403.
        We 
overrule appellant’s second and third issues.
Hearsay Statements, Admission of Exhibits 53 and 55,
and the Confrontation Clause
 
        In 
his fourth through seventh issues, appellant complains that the trial court 
erred during the punishment phase of trial by admitting the hearsay statements 
of L.J. and K.G. and DNA evidence reports linking appellant to the alleged 
sexual assaults of both of these women.  Specifically, appellant complains 
that the trial court erred by allowing two police officers to testify about 
statements the women made when they reported being sexually assaulted and by 
admitting the DNA evidence through the police officers. Appellant asserts that 
in allowing the statements and exhibits into evidence, the trial court violated 
his constitutional right to confront and cross-examine witnesses under the Sixth 
and Fourteenth Amendments.  The State responds that the statements were 
properly admitted as nontestimonial excited utterances under evidence rule 
803(2). 
Tex. R. Evid. 803(2).  
Appellant stipulated to the admissibility of the exhibits but conditioned his 
stipulation on his prior Confrontation Clause objection.
        Fort 
Worth Police Officer Thomas Shelton testified that on August 17, 2000, he found 
L.J. walking down the street. Her pants were torn and she was “crying” and 
“upset.”  Officer Shelton asked her what had happened and she 
responded, still crying and “very emotional,” that approximately three hours 
earlier she had been walking home from the store when a car pulled up beside her 
and asked her how she was doing. According to Officer Shelton, she then 
described how the car pulled over when she walked away from it and the driver 
got out, grabbed her, held a gun to her side, and told her to get into the 
car.  They drove to an old concrete factory, pulled into the parking lot, 
and the driver made L.J. perform oral sex on him. Afterwards, L.J. and the 
driver went into the building and the driver had sexual intercourse with L.J. 
without her consent.
        The 
State admitted exhibit 53 during punishment.  The exhibit was a DNA lab 
report regarding a piece of paper with semen on it found at the concrete factory 
where L.J. alleged she was raped.  DNA analysis confirmed that the semen on 
the paper came from appellant.
        The 
other contested testimony came from Fort Worth Police Officer Daryl Horn.  
Officer Horn testified that on September 27, 2001, he was flagged down by K.G. 
in a park near Benbrook Lake. Officer Horn described K.G. as being “very 
upset, very emotionally distraught, almost hysterical.”  Officer Horn 
testified that K.G. told him that she had been raped and robbed in the park 
approximately twenty to thirty minutes earlier.  While K.G. and Officer 
Horn spoke, K.G. continued to cry and be upset.  K.G. told Officer Horn 
that she had been trying to find a ride home when a man in a car pulled over and 
she offered him two dollars to drive her home.  The driver took her to an 
apartment complex near Hulen Street and went inside.  When the driver came 
out, he screamed at K.G. and told her that she was going to obey him.  The 
driver took K.G. to the park near Benbrook Lake and sexually assaulted her for 
two to two-and-a-half hours.  After the driver ejaculated, he robbed K.G. 
of forty dollars.  Officer Horn took K.G. to the hospital for a rape 
exam.  DNA analysis of the semen found in K.G. showed that it belonged to 
appellant.
Admissibility 
Under Confrontation Clause
        We 
review de novo the trial court’s ruling that the admission of Officers 
Shelton’s and Horn’s testimony would not violate appellant’s Confrontation 
Clause rights.  See Lilly v. Virginia, 527 U.S. 116, 137, 119 
S. Ct. 1887, 1900 (1999) (holding that “when deciding whether the admission of 
a declarant’s out-of-court statements violates the Confrontation Clause, 
courts should independently review whether the government’s proffered 
guarantees of trustworthiness satisfy the demands of the Clause”).  The 
Sixth Amendment provides that, “[i]n all criminal prosecutions, the accused 
shall enjoy the right to . . . be confronted with the witnesses against him.” U.S. Const. amend. VI.  The central 
concern of the Confrontation Clause is to ensure the reliability of the evidence 
against a criminal defendant by subjecting it to rigorous testing in the context 
of an adversarial proceeding before the trier of fact.  Lilly, 527 
U.S. at 123-24, 119 S. Ct. at 1894.
        At 
the time of appellant's trial, a Confrontation Clause challenge to the 
admissibility of an out-of-court statement offered against the accused was 
governed by Ohio v. Roberts, 448 U.S. 56, 100 S. Ct. 2531 (1980).  
Under Roberts, before an out-of-court statement could be admitted, the 
hearsay declarant had to be unavailable if she was not present for 
cross-examination at trial.  Even then, her statement was admissible only 
if it bore adequate “indicia of reliability.”  Reliability could be 
shown by the presence of a firmly rooted hearsay exception or by particularized 
guarantees of trustworthiness.  Id. at 66, 100 S. Ct. at 2539.
        While 
appellant's appeal was pending before this court, the Supreme Court replaced the 
Roberts test with a new test, set out in Crawford v. Washington, 
541 U.S. 36, 124 S. Ct. 1354 (2004).  In Crawford, the Court 
declared that the Roberts test was at once too broad because it applied 
the same analysis whether the out-of-court statement was testimonial or not, and 
too narrow because it admitted ex parte testimonial statements “upon a mere 
finding of reliability.”  Id. at 60, 124 S. Ct. at 1369.
        Crawford 
distinguishes the standards used in determining the admissibility of 
nontestimonial statements from those applicable to testimonial statements.  
Under Crawford, without exception, testimonial statements of witnesses 
absent from trial are admissible over a Sixth Amendment Confrontation Clause 
objection only where the declarant is unavailable and the defendant has had a 
prior opportunity to cross-examine the declarant.[3]  
Id. at 68, 124 S. Ct. at 1374.  Testimonial statements from absent, 
unavailable witnesses are not admissible if the defendant has not had the 
opportunity to cross-examine the declarant. In contrast, nontestimonial 
statements of an unavailable declarant who has not been cross-examined may still 
be admitted as evidence in a criminal case if the statements qualify under an 
exception to the rule against hearsay.  Id.
        Therefore, 
the threshold question under Crawford is whether the statement offered is 
“testimonial” in nature.[4]  Unfortunately, 
the Supreme Court failed to define what constitutes a testimonial statement. 
Instead, the Court stated,
   
We leave for another day any effort to spell out a comprehensive definition of 
“testimonial.” Whatever else the term covers, it applies at a minimum to 
prior testimony at a preliminary hearing, before a grand jury, or at a former 
trial; and to police interrogations. These are the modern practices with closest 
kinship to the abuses at which the Confrontation Clause was directed.
 
 
Id. 
at 68, 124 S. Ct. at 1374.
        Appellant 
argues in his reply brief that K.G.’s and L.J.’s statements are testimonial 
because they are analogous to statements made under police interrogation.  
The State argues that the statements are nontestimonial because they were not 
made during a police interrogation.  The State characterizes each statement 
as a “call for help,” not initiated by the police, that was part of “the 
criminal incident itself, not part of the prosecution that followed.”  
Appellant concedes that a 911 call may constitute a nontestimonial 
“spontaneous declaration”; however, he contends that the statements in this 
case were not spontaneous, but rational, thinking responses to questions posed 
by the police.
        Since 
Crawford was decided, several Texas and other courts have had the 
opportunity to examine whether certain out-of-court statements are testimonial. See 
Key v. State, No. 12-04-00030-CR, 2005 WL 467167, at *3 (Tex. App.—Tyler 
Feb. 28, 2005, pet. filed).  “Most . . . have held that initial 
police-victim interaction at the scene of an incident is not an interrogation 
and that admission of testimony about that interaction does not offend the 
Confrontation Clause.”  Id.; see also Spencer v. State, No. 
14-04-00059-CR, 2005 WL 975672, at *4 (Tex. App.—Houston [14th Dist.] Apr. 28, 
2005, no pet. h.) (agreeing with Key’s conclusion that “statements 
made to officers responding to a call during the initial assessment and securing 
of a crime scene are not testimonial”); Wilson v. State, 151 S.W.3d 
694, 698 (Tex. App.—Fort Worth 2004, pet. ref’d) (holding that statements 
made by appellant’s girlfriend to police at scene of accident were 
nontestimonial).
        Here, 
the testifying officers did not seek out the victims for the purpose of 
investigating the offenses the victims eventually described. Indeed, the 
officers did not know if any offense had been committed when they first 
encountered the victims.  The victims were not considered suspects, 
accomplices, or co-conspirators.  The officers’ testimony indicates that 
each one asked questions of a lone, visibly upset female in a deserted place in 
the middle of the night in an attempt to determine the reason for her emotional 
state.  We conclude that the victims’ statements to the officers were not 
the product of custodial interrogation, nor were they responses to tactically 
“structured police questioning.”  See Crawford, 541 U.S. at 53 
n.4, 124 S. Ct. at 1365 n.4.
        Moreover, 
even if the trial court had abused its discretion in admitting L.J.’s and 
K.G.’s statements to the police, any error would be harmless.  See 
Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S. Ct. 1431, 1438 (1986); 
Tex. R. App. P. 44.2(a).  DNA 
tests corroborated the testimony that appellant had engaged in sexual 
intercourse with the declarants.  The officers’ observations of the 
disheveled appearance and disturbed and emotional demeanor of the declarants 
also corroborated the testimony that they had been assaulted. In addition to 
Y.D.’s testimony at guilt-innocence, five other prostitutes testified at 
punishment that appellant assaulted them.  Appellant was able to 
cross-examine all of them. In light of the evidence corroborating L.J.’s and 
K.G.’s statements; the strength of the State’s case against appellant, the 
cumulative nature of the evidence, and the relative unimportance of the hearsay 
testimony—as evidenced by the testimony of the five other women who testified 
to similar assaults by appellant; and the fact that appellant was able to 
cross-examine all of those women, we can determine beyond a reasonable doubt 
that the admission of L.J.’s and K.G.’s hearsay statements and the DNA 
evidence did not contribute to appellant’s punishment.
Admissibility 
as Excited Utterances
        In 
addition to disputing whether L.J.’s and K.G.’s statements are admissible 
under Crawford, appellant also contends that the statements are not 
admissible as excited utterances under rule 803(2). Tex. R. Evid. 803(2). We disagree.
        Although 
appellant asserts several reasons why L.J.’s and K.G.’s comments to the 
police are not excited utterances, the only reason he asserted at trial was that 
“it is not near the time period.” Thus, we will address only appellant’s 
contention that L.J.’s and K.G.’s comments, and the offenses described by 
them, were too remote in time from the occurrence of the offenses. See Tex. R. App. P. 33.1(a)(1)(A); Guevara 
v. State, 97 S.W.3d 579, 583 (Tex. Crim. App. 2003).
        “It 
is not dispositive that [a] statement is an answer to a question or that it was 
separated by a period of time from the startling event; these are simply factors 
to consider in determining whether the statement is admissible under the excited 
utterance hearsay exception.” Brown v. State, 96 S.W.3d 508, 514 (Tex. 
App.—Austin 2002, no pet.).[5]  The critical 
determination is “whether the declarant was still dominated by the emotions, 
excitement, fear, or pain of the event” or condition at the time of the 
statement. Id. (quoting Salazar v. State, 38 S.W.3d 141, 154 (Tex. 
Crim. App.), cert. denied, 534 U.S. 855 (2001)). Here, Officer Shelton 
testified that L.J. was upset and very emotional when he saw her and that she 
was still crying while she answered his questions. Officer Horn described K.G. 
as being “very upset, very emotionally distraught, almost hysterical.” 
Considering the apparent emotional state of the women when the officers 
encountered them, we do not believe the trial court abused its discretion in 
determining that their statements were admissible as excited utterances. See 
Tex. R. Evid. 803(2); Brown, 
96 S.W.3d at 514. Accordingly, we overrule appellant’s fourth through seventh 
issues.
CONCLUSION
        Having 
overruled all of appellant’s issues, we affirm the trial court’s judgment.
 
  
                                                                  WILLIAM 
BRIGHAM
                                                                  JUSTICE
 
  
  
PANEL 
A:   WALKER, J; WILLIAM BRIGHAM, J. (Senior Justice, 
Retired Sitting by Assignment); and SAM J. DAY, J. (Retired Sitting by 
Assignment).
 
PUBLISH
 
DELIVERED: 
June 2, 2005


NOTES
1.  
Y.D.’s convictions included one misdemeanor theft conviction, five 
prostitution convictions, a state jail felony conviction for possession of a 
controlled substance, and federal convictions for embezzlement and felony theft.
2.  
All errors are in original.
3. 
Crawford was pending, certiorari granted, in the United States Supreme 
Court at the time of submission, and both sides acknowledged that the Supreme 
Court’s holding in that case would be dispositive of the present case.
4.  
The Supreme Court derived this term from the Confrontation Clause's language, 
noting that the Clause is concerned with “witnesses,” whom the Court 
identifies as those who “bear testimony.”  Id. at 51, 124 S. Ct. 
at 1364.
5.  
Because Brown is a pre-Crawford case, it is unclear whether the 
victim’s statements to police are testimonial or nontestimonial because that 
issue is not analyzed.