COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
 2-05-148-CR

 

 

LUIS CARLOS GONGORA, JR.                                               APPELLANT

A/K/A
LUIS C. GONGORA, JR.

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM
THE 213TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

                                                   I.  Introduction








Appellant Luis Carlos Gongora, Jr. appeals his conviction
for engaging in organized criminal activity, to wit: murder.  A jury found Gongora guilty, and after he
pled true to the enhancement allegation, the trial court assessed his
punishment at life imprisonment.  On
appeal, Gongora contends that the trial court erroneously allowed a third-party
witness to testify to inculpatory admissions made by a non-testifying
accomplice.  We affirm.

                               II.  Factual and Procedural Background

Shortly after midnight on December 27, 2003, Erik Campa,
Raul Atayde, and Cristina Sigala left a nightclub in south Fort Worth and drove
towards Sigala=s home. 
Along the way, a gray Oldsmobile Alero passed the pickup in which the
three were riding and opened fire on them. 
Sigala died as a result of a shotgun wound to the head, and neither
Campa nor Atayde could identify the occupants of the Alero.  








During the course of its investigation, Fort Worth police
recovered a twenty-five caliber shell casing from the scene and three
twenty-five caliber bullets from the pickup. 
A short time later, officers received an anonymous tip that ultimately
led them to the gray Alero.  Police
searched the car and recovered another twenty-five caliber shell casing under
the driver=s seat. 
Ballistics later confirmed that both the casing recovered at the scene
and the casing recovered in the Alero were fired from the same gun.  Ericka Cerda, the owner of the Alero,
informed the officers that on the night of the shooting she awoke at approximately
1:30 a.m. and discovered that her car was missing.  Cerda told police that Gongora, Richard
Maldonado, and her boyfriend Isaul Reyna returned the car at approximately 3
a.m.  The three men were all members of
various Fort Worth area street gangs.  

Based on the information provided by Cerda, police obtained
and executed a search warrant on Gongora=s apartment.  Conversations with the occupants of the
apartment eventually prompted police to interview another gang member by the
name of Tomas Mora.  Mora informed police
of a detailed conversation he had with Maldonado at Gongora=s apartment a day
or two after the shootings.  During that
conversation, Maldonado told Mora that he, Gongora, and Reyna each took part in
the shooting.  Maldonado went on to say
that while Reyna drove Cerda=s car, he fired
the shotgun and Gongora fired several rounds from a twenty-five caliber handgun
at the pickup.  Mora also told police
that during the course of his conversation with Maldonado, Gongora joined in
and admitted to shooting the twenty-five caliber weapon during the shootout. 








At trial, the State called Mora to testify regarding the statements
made by both Gongora and Maldonado. 
Gongora=s counsel voiced hearsay and confrontation
clause objections in an attempt to exclude Mora=s testimony
regarding Maldonado=s statements.  However, the trial court overruled these
objections and permitted Mora to testify to all of the statements made by both
Gongora and Maldonado during their conversation with Mora.  Although Gongora did not testify at trial, he
was convicted and now appeals.

                                          III.  Confrontation Clause

Gongora contends that the trial court=s admission of the
statements Maldonado made to Mora violated his confrontation rights under the
Sixth Amendment of the United States Constitution and deprived him of his right
to cross-examine Maldonado.  Gongora also
asserts that Mora=s testimony regarding Maldonado=s statements
constituted inadmissible hearsay that the trial court erroneously admitted
under the Astatement against interest@ exception.  Because the central issue on appeal is
whether a non-testifying witness=s statements were
admissible against a criminal  defendant,
we must first address whether the admission of Maldonado=s statements
violated Gongora=s right to confrontation.  See Wilson v. State, 151 S.W.3d 694,
697 (Tex. App.CFort Worth 2004, pet. ref=d).  In deciding this constitutional issue, we
review the trial court=s ruling de novo. Wall v. State,
184 S.W.3d 730, 742 (Tex. Crim. App. 2006).













 In all state and
federal criminal prosecutions, the accused has the right, guaranteed by the
Sixth and Fourteenth Amendments to the United States Constitution, Ato be confronted
with the witnesses against him.@ U.S. Const. amends. VI, XIV; Crawford v.
Washington, 541 U.S. 36, 42, 124 S. Ct. 1354, 1359 (2004); Pointer v.
Texas, 380 U.S. 400, 406, 85 S. Ct. 1065, 1069, (1965) (applying the Sixth
Amendment to the states).  Prior to the
United States Supreme Court=s decision in Crawford,
Confrontation Clause issues were resolved under Ohio v. Roberts, 448
U.S. 56, 100 S. Ct. 2531(1980).  In Roberts,
the Supreme Court held that the admission of hearsay statements against a
criminal defendant at trial does not violate that defendant=s rights under the
Confrontation Clause so long as those statements possess an adequate Aindicia of
reliability,@ meaning generally that the statements
either fall under a Afirmly rooted hearsay exception@ or show Aparticularized
guarantees of trustworthiness.@  Roberts, 448 U.S. at 66, 100 S. Ct. at
2539.  However, Crawford drew a
distinction between testimonial and non-testimonial statements holding that the
Confrontation Clause bars the admission of out‑of‑court testimonial
statements of witnesses who do not testify at trial unless the declarant is
unavailable and the defendant has had a prior opportunity to cross‑examine
the declarant. Crawford, 541 U.S. at 59, 124 S. Ct. at 1369.  In rejecting the Roberts standard, the
Court explained that A[when] testimonial statements are at
issue, the only indicium of reliability sufficient to satisfy constitutional
demands is the one the Constitution actually prescribes: [C]onfrontation.@  Id. at 68‑69, 124 S. Ct. at
1374.  Therefore, to implicate the
Confrontation Clause, the out‑of‑court statement at issue
must have been (1) made by an absent declarant and (2) testimonial in nature.  See id. at 68, 124 S. Ct. at 1374; King
v. State, 189 S.W.3d 347, 358 (Tex. App.CFort Worth 2006,
no pet.).

Post-Crawford, the threshold question in any
Confrontation Clause analysis is whether the statements at issue are
testimonial or non‑testimonial in nature. 
Wilson, 151 S.W.3d at 697; see Crawford, 541 U.S. at 68,
124 S. Ct. at 1374.  Although the Crawford
Court declined to define Atestimonial,@ it recognized
that statements made in the following contexts are indisputably
testimonial:  ex parte testimony at a
preliminary hearing, testimony before a grand jury, testimony at a former
trial, and statements derived from police interrogations.  See Crawford, 541 U.S. at 68, 124
S. Ct. at 1374.  We determine whether a
statement is Atestimonial@ under Crawford
using the standard of an objectively reasonable declarant standing in the
shoes of the actual declarant.   Wall,
184 S.W.3d at 742.  








Maldonado=s statements to
Mora do not fall within the categories of testimonial evidence described in Crawford.  None of Maldonado=s statements to
Mora were made in the context of a police investigation or interrogation, King,
189 S.W.3d at 359, nor were they made to a police officer, court official, or
under circumstances that would lead an objectively reasonable witness to
believe that the statements would be available for use at a later trial.  See Crawford, 541 U.S. at 52, 124 S.
Ct. at 1364.  The statements were simply
casual remarks spontaneously made by Maldonado while he Ahung out@ with Mora at
Gongora=s apartment and
can not be regarded as testimonial in nature. 
See id. at 52, 124 S. Ct. at 1364; Woods v. State, 152
S.W.3d 105, 114 (Tex. Crim. App. 2004), cert. denied, 544 U.S.1050
(2005).  Consequently, we hold that
Maldonado=s statements to Mora are non-testimonial,
and therefore, Gongora=s rights under the Confrontation Clause
were not implicated.  See Crawford,
541 U.S. at 68, 124 S. Ct. at 1374; Woods, 152 S.W.3d at 105.

However, Gongora argues that even if we conclude that
Maldonado=s statements are non-testimonial, we must
nevertheless analyze his Sixth Amendment challenge under the former standard
set forth in Ohio v. Roberts and reverse his conviction because the
statements constituted hearsay and did not bear sufficient indicia of
reliability.  See Roberts, 448
U.S. at 66, 100 S. Ct. at 2539.  However,
the Crawford Court recognized that not all hearsay implicates the Sixth
Amendment=s core concerns.  Crawford, 541 U.S. at 51, 124 S. Ct.
at 1364.  To illustrate, the Court
explained:

An off‑hand,
overheard remark might be unreliable evidence and thus a good candidate for
exclusion under [the] hearsay rules, but it bears little resemblance to the
civil‑law abuses the Confrontation Clause targeted.  On the other hand, ex parte examinations might
sometimes be admissible under modern hearsay rules, but the Framers certainly
would not have condoned them.  

 








Id., 124 S. Ct. at 1364. 
Although the Crawford Court did not expressly overrule the Roberts
standard as applied in the non-testimonial context, the Court strongly
suggested that non-testimonial hearsay falls outside the scope of the Sixth
Amendment analysis entirely.  See id. at
68, 124 S. Ct. at 1374.  The Court noted
that A[w]here
non[-]testimonial hearsay is at issue, it is wholly consistent with the Framers= design to afford
the States flexibility in their development of hearsay lawBas does Roberts,
and as would an approach that exempted such statements from Confrontation
Clause scrutiny all together.@  Id., 124 S. Ct. at 1374.  








Following Crawford, this court has
questioned the continued viability of the Roberts standard as applied to
analyses of non-testimonial statements under the Confrontation Clause.  See King, 189 S.W.3d at 361.  However, the United States Supreme Court
recently clarified the scope of the protections guaranteed under the
Confrontation Clause by stating that A[o]nly
[testimonial] statements . . . cause [a] declarant to be a >witness=
within the meaning of the Confrontation Clause.@  Davis v. Washington, 126 S. Ct. 2266,
2273 (2006).  The Court went on to
explain that A[i]t is the testimonial
character of the statement that separates it from other hearsay that, while
subject to traditional limitations upon hearsay evidence, is not subject to the
Confrontation Clause.@  Id. 
We interpret Davis as unequivocally limiting any analysis under
the Confrontation Clause to only those statements that are testimonial in
nature.  See id.  We agree with our sister court in
Amarillo that the Roberts standard no longer governs the analysis of a
non-testimonial statement under the Confrontation Clause.  See Flores v. State, 170 S.W.3d 722,
723 (Tex. App.CAmarillo 2005, pet ref=d)
(stating that Agone is the test of
reliability when the court is faced with a [C]onfrontation [C]lause argument@ as to
a non-testimonial statement), cert. denied, 2006 WL 1647113 (2006).   








Moreover, we believe our position to be in line
with the court of criminal appeals=
approach on this issue.  In Woods v.
State, the court faced the issue of whether allowing a third-party witness
to testify to inculpatory admissions made by a non-testifying accomplice
violated the defendant=s rights under the
Confrontation Clause.  Woods, 152
S.W.3d at 112.  In accordance with Crawford,
the court evaluated the accomplice=s
admissions and found them to be non-testimonial.  Id. at 114.  Therefore, the court held that the new rule
articulated in Crawford did not apply, and the defendant=s
rights under the Confrontation Clause were not violated.  See id.  Although, the court did analyze the
trustworthiness of the hearsay statements under the rules of evidence to
determine whether the trial court erred in admitting the statements as a Astatement
against interest,@ the court dispensed entirely
with any further Confrontation analysis under Roberts once the
statements were found to be non-testimonial. 
See id. at 112-14. 
Therefore, we hold that Maldonado=s
non-testimonial statements fall outside the scope of the Sixth Amendment and
are not subject to Confrontation Clause scrutiny under Roberts.  See Davis, 126 S. Ct. at 2273.  Rather, we look to the applicable hearsay
rules in reviewing the trial court=s
admission of these statements.  See
Woods, 152 S.W.3d at 112-14.    

                                     IV.  Statements Against Interest








Gongora also challenges the trial court=s
admission of Mora=s testimony regarding
Maldonado=s out of court statements
under the hearsay rules.  Specifically,
Gongora contends that the court erred in admitting the hearsay statements under
the Astatement
against interest@ exception because there were
insufficient corroborating circumstances to clearly indicate the statements
were trustworthy.  We review a trial
court=s
ruling to admit or exclude evidence under an abuse of discretion standard.  Martin v. State, 173 S.W.3d 463, 467
(Tex. Crim. App. 2005) (quoting Sauceda v. State, 129 S.W.3d 116, 120
(Tex. Crim. App. 2004)).  We will not
reverse a trial court as long as its ruling was within the Azone
of reasonable disagreement.@ Couchman
v. State, 3 S.W.3d 155, 158 (Tex. App.CFort
Worth 1999, pet. ref=d).  Moreover, if the trial court=s
ruling on the admission of evidence is correct under any theory of law, even if
the trial court gives the wrong reason for its ruling, we must affirm the court=s
decision to admit the evidence.  Id.

In order for a declaration against penal
interest to be admissible under the Texas Rules of Evidence, the statement must
be self‑inculpatory with corroborating circumstances that clearly
indicate the trustworthiness of the statement. 
Tex. R. Evid.
803(24).  A statement which is self‑inculpatory
can be admissible against a defendant who was not the declarant of the
statement.  Dewberry v. State, 4
S.W.3d 735, 751 (Tex. Crim. App. 1999), cert. denied 120 S. Ct. 2008
(2000).  On review, Gongora does not
contend that Maldonado=s statements were not
sufficiently self-inculpatory.  Rather,
he simply asserts that the statements were inadmissible under the rules of
evidence because insufficient corroborating circumstances existed to indicate that
Maldonado=s statements were clearly
trustworthy. 








In assessing the trustworthiness of a statement
against interest under the rules of evidence, a trial court should consider a
number of factors: (1) whether guilt of the declarant is inconsistent with
guilt of the defendant, (2) whether the declarant was so situated that he might
have committed the crime, (3) the timing of the declaration, (4) the
spontaneity of the declaration, (5) the relationship between the declarant and
the party to whom the statement is made, and (6) the existence of independent
corroborative facts.  See Bingham v.
State, 987 S.W.2d 54, 58 (Tex. Crim. App. 1999); Davis v. State, 872
S.W.2d 743, 749 (Tex. Crim. App. 1994). 
The first two factors only apply when the defendant is the proponent of
a statement against interest made by another that tends to exculpate the
defendant at trial.  Woods, 152
S.W.3d at 113.  However, when the State
offers the statement to inculpate the defendant, as in this case, the first two
factors are inapplicable.  Id.








As to the timing of the statement, Maldonado
made the statements at issue to Mora a day or two after the offense and before
police had developed any leads or questioned any suspects in the case.  Moreover, Maldonado made the statements
spontaneously in the course of simple conversation while he and Mora Ahung
out@ at
Gongora=s
apartment.  There is no evidence in the
record to suggest that Mora either took part in the shooting or initiated the
conversation that led to Maldonado=s
admissions.  Rather, Maldonado made the
statements to Mora, an acquaintance, at a time when he had no motive to shift
blame onto Gongora or minimize his own involvement in the shooting.  See id.           Additionally,
there were multiple independent corroborating circumstances indicating the trustworthiness
of Maldonado=s statements.  First, Mora testified that Maldonado stated
that on the night of the shooting, he Agot
into it with some people@ that were driving along
beside him in a pickup truck.  Mora
stated that Maldonado explained that he, Gongora, and Reyna were riding in
Cerda=s car
when the altercation arose and that he then fired one shot from a shotgun at
the pickup.  Cerda testified at trial
that Maldonado had access to a shotgun 
and that he had shotgun shells in his possession the night before the
shooting. Cerda also testified that on the night of the shooting she noticed
that her gray Oldsmobile Alero was missing and that her boyfriend, along with
Gongora and Maldonado, returned the car at approximately 3 a.m.  The record also indicates that the victim in
this case died as a result of a shotgun wound to the head and that Campa informed
police that the shooters fled the scene in a gray Alero.  Mora also testified that Gongora admitted to
him that he took part in the shooting by firing a twenty-five caliber handgun
at Atwo
dudes@ and a
girl while on Hemphill street.  Other
evidence presented at trial indicated that the shooting did, in fact, occur on
Hemphill street and that, at the time of the shooting, there were two males and
one female riding in the pickup.  During
the investigation, police were able to determine that the twenty-five caliber
shell casing found at the scene of the shooting was fired from the same weapon
that shot the other twenty-five caliber shell casing later found in Cerda=s car.
Therefore, in light of the evidence in the record, we hold that the trial court
did not abuse its discretion in admitting Mora=s
testimony under rule of evidence 803(24) because there were sufficient
corroborating circumstances to allow the court to reasonably determine that
Maldonado=s statements were trustworthy.








                                         V.  Bruton v. United States

Gongora also asserts that the admission of Mora=s
testimony at trial deprived him of his Sixth Amendment right to cross-examine
the witnesses against him citing Bruton v. United States. 391 U.S. 123,
88 S. Ct. 1620 (1968).  Bruton involved
the joint trial of co‑defendants where a non‑testifying defendant=s
statement that incriminated the other defendant was introduced into evidence.  Id. at 124-25, 88 S. Ct. at 1621-22.  The non-testifying co-defendant=s
Fifth Amendment rights prevented the other defendant from cross‑examining
him regarding the incriminating statement, calling him as a witness, or
commenting on his failure to testify.  Id. at 124, 88 S. Ct. at 1621.  Under the Bruton holding, a defendant=s
Sixth Amendment confrontation and cross-examination rights are violated if, at
a joint trial, a non-testifying co‑defendant=s
facially incriminating out‑of‑court statement is admitted against
the other defendant.  Id. at 135‑36,
88 S. Ct. at 1627-28.  However, in this
case, Gongora and Maldonado are not co-defendants.  Gongora was tried separately for the offense
at issue, thereby rendering the concerns underlying Bruton inapplicable
in this case.  See id., 88 S. Ct.
at 1627-28. 

                                                  VI.  Conclusion








Therefore, we hold that the admission of Mora=s
testimony regarding Maldonado=s statements
did not violate Gongora=s Sixth Amendment rights.  Further, we hold that the trial court did not
abuse its discretion in admitting those statements under the Astatement
against interest@ exception to the hearsay rule
and we affirm the trial court=s
judgment.

 

 

ANNE
GARDNER

JUSTICE

 

PANEL B:    DAUPHINOT,
HOLMAN, and GARDNER, JJ.

 

PUBLISH

 

DELIVERED:  November 9, 2006