# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-19-00354-CR

**James Tyshawn Pinkard, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE 27TH DISTRICT COURT OF BELL COUNTY
## NO. 77235, THE HONORABLE JOHN GAUNTT, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant James Tyshawn Pinkard of felony murder. *See* Tex. Penal Code § 19.02(c). In three issues, appellant contends that the evidence was insufficient to support the jury's guilty verdict, that the trial court abused its discretion by admitting the medical examiner's testimony that a robbery had occurred, and that appellant's right to confrontation was denied when he was not permitted to question a police officer who relayed testimonial information to the medical examiner. For the following reasons, we affirm the judgment of conviction.

## BACKGROUND

The jury heard evidence that on the evening of March 7, 2017, at an apartment complex, Rocky Marsh was robbed, stabbed with a screwdriver, and struck with a saw. Marsh sustained a fatal "penetrating wound" "on the upper left side of the chest" and "chop wounds on

the top of his head." In response to 911 calls, EMS and the police were dispatched to the scene, but they were unable to resuscitate Marsh. Marsh's front pants pockets had been pulled out, and he did not have his phone or other belongings on his person.[1]

In their investigation, the police recovered a saw, a beer bottle, and a black bag of the type used at a nearby convenience store, and they obtained surveillance-video footage from the convenience store. A portion of the footage contained audio and video capturing a verbal altercation between appellant and Marsh, which occurred right outside the store a short time before Marsh was killed. The footage shows Marsh walking behind a vehicle with his phone, appellant getting outside of the vehicle from the front passenger seat and verbally confronting Marsh, saying "[y]ou don't know whose streets you're on," that appellant "[will] get somebody to come over and handle this shit, bro," and "[b]e here when [appellant got] back. Watch how many people are going to be here." Appellant also told Marsh to "get away from [appellant's] baby's mama" and that Marsh "already pulled [a] knife." The video then shows appellant getting back into the vehicle's front passenger seat holding a crowbar and the vehicle driving away. Approximately fifteen minutes later, the vehicle returned briefly before leaving again. From the footage, the police were able to identify the vehicle and determined that it was registered to appellant. Following a traffic stop the next day, the police arrested appellant and his girlfriend Erica Brownlee who was pregnant with appellant's child. The police found a crowbar, knife, and a Phillips-head screwdriver in the vehicle as well as blood stains that were later linked to Marsh through DNA testing.

---

[1] The responding officer who performed CPR on Marsh until EMS arrived testified at trial: "There was nothing in his pockets. The actual pocket, when you stick your hands, pull that lining out, I guess, where the pockets were pulled out, the material."

The State subsequently indicted appellant for felony murder of Marsh, alleging that he

> did then and there, acting individually and as a party with Shamar Lamar Lewis, Elijah Jones, and Erica Brownlee, intentionally and knowingly commit or attempt to commit an act clearly dangerous to human life, to-wit: by hitting and striking Rocky Marsh with a saw and hitting and striking and stabbing Rocky Marsh with a screwdriver, and the defendant, acting individually and as a party with Shamar Lamar Lewis, Elijah Jones, and Erica Brownlee was then and there in the course of intentionally and knowingly committing a felony, to-wit: Aggravated Robbery, and the death of Rocky Marsh was caused while the defendant, acting individually and as a party with Shamar Lamar Lewis, Elijah Jones, and Erica Brownlee was in the course of and in furtherance of or the immediate flight from the commission or attempt of the Aggravated Robbery.

Appellant, his brother Shamar Lamar Lewis, and Elijah Jones were members of the Long Branch Posse gang.

The State's cases against appellant and Brownlee were joined and proceeded to a jury trial in January 2019.[2] The State's witnesses were investigating officers and detectives, the medical examiner who performed the autopsy, the store's owner who testified about the surveillance-video footage, a forensic scientist who provided DNA testimony, and Jones who was a juvenile in March 2017. The evidence showed that following the verbal altercation between appellant and Marsh, Brownlee and appellant drove away from the store and picked up Lewis and Jones. After picking up Lewis and Jones, they drove back to the store and then to the apartment complex where they found and confronted Marsh.

Jones testified that he pled guilty as a party to capital murder of Marsh, was sentenced to thirty years' confinement, agreed to be a witness as part of the plea agreement, and was currently in the Texas Juvenile Justice Department-Institutional Division. As to the events

---

[2] The jury also found Brownlee guilty, and she has appealed from the trial court's judgment of conviction in this Court's cause number 03-19-00353-CR.

surrounding Marsh's murder, he testified that members of the Long Branch Posse did not like strangers taking their pictures and that he was with Lewis when appellant called him and told him that a "dude" had "threatened" appellant and his "baby's mama" Brownlee with a knife and took a picture of appellant's vehicle's license plate on Marsh's phone. Appellant then told Jones that "he was going to come get [them]." With Brownlee driving, appellant and Brownlee picked up Jones and Lewis, and they drove around to "find the dude that threatened him with the knife" to "[b]eat him up" and "[t]ake his phone." Appellant told Lewis that he had a crowbar and that there was another one in the trunk. Brownlee saw Marsh at the apartment complex and "drove towards him." After she stopped the vehicle and "popped" the trunk, Lewis took out a "[s]aw and screwdriver" from the trunk. Appellant got out of the vehicle with a crowbar and confronted Marsh, Lewis hit Marsh "in the back of the head" with the saw and stabbed and stomped on him, and appellant "came and went in [Marsh's front] pockets" and "took [his] phone and lighter" and a "knife." They then left in the vehicle with Brownlee driving to take Jones home, but they turned around to go back to the apartments because Lewis "told [them] he dropped the saw." They were unable to retrieve the saw because the police had already arrived.

The State's exhibits included: (i) photographs of Marsh; the scene; items recovered at the scene including the saw, bottle of beer, and black bag; and items found in appellant's vehicle including the crowbar and screwdriver; (ii) 911 calls reporting the crime; (iii) the video-surveillance footage from the store; (iv) the DNA laboratory report; and (v) the autopsy report. The evidence showed that Marsh purchased a bottle of beer at the convenience store shortly before the murder, and the black bag found at the scene matched the type of bag that the convenience store used. DNA testing linked Marsh to the "blade portion with the teeth"

4

of the saw that was recovered from the scene and to stains found in the vehicle. Appellant's DNA was linked to the knife that was in the vehicle when he was arrested the following day.

Appellant did not call any witnesses during the trial's guilt-innocence phase. The jury found appellant guilty, and the trial court thereafter held a punishment hearing and sentenced appellant to thirty-five years' confinement. This appeal followed.

## ANALYSIS

### Sufficiency of the Evidence

In his first issue, appellant contends that the evidence is insufficient to support the jury's guilty verdict because according to appellant, Jones was the only testifying witness present during the incident, and Jones testified that there was never a plan to rob Marsh or to take his phone, he never thought anyone would be killed, and Lewis was the only person to strike Marsh.

*Standard of Review*

Due process requires that the State prove, beyond a reasonable doubt, every element of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 316–17 (1979); *Lang v. State*, 561 S.W.3d 174, 179 (Tex. Crim. App. 2018). When reviewing the sufficiency of the evidence to support a conviction, we consider all the evidence in the light most favorable to the verdict to determine whether, based on that evidence and the reasonable inferences therefrom, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013).

The trier of fact is the sole judge of the weight and credibility of the evidence. *See Zuniga v. State*, 551 S.W.3d 729, 733 (Tex. Crim. App. 2018); *Blea v. State*, 483 S.W.3d 29, 33 (Tex. Crim. App. 2016); *see also* Tex. Code Crim. Proc. art 36.13 (stating that "the jury is the

exclusive judge of the facts"). We presume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Jackson*, 443 U.S. at 319. When the record supports conflicting reasonable inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that resolution. *Zuniga*, 551 S.W.3d at 733; *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (citing *Jackson*, 443 U.S. at 326).

*Felony Murder*

As charged in this case, the State had to prove that appellant, individually or as a party, committed or attempted to commit aggravated robbery and, in the course and in furtherance of the commission or attempt, he, individually or as a party, committed or attempted to commit an act clearly dangerous to human life that caused Marsh's death. *See* Tex. Penal Code §§ 7.01, 19.02(b)(3). A person commits robbery if, in the course of committing theft and with intent to obtain or maintain control of property, he "intentionally, knowingly, or recklessly causes bodily injury to another," *see id.* § 29.02(a)(1), and the offense of robbery is aggravated when the person "causes serious bodily injury to another," *see id.* § 29.03(a)(1). Because the charge authorized the jury to convict appellant individually or as a party, we must uphold the verdict of guilt if the evidence is sufficient on either theory. *See Anderson v. State*, 416 S.W.3d 884, 889 (Tex. Crim. App. 2013) (explaining that when charge authorizes jury to convict appellant on more than one theory, "the verdict of guilt will be upheld if the evidence is sufficient on any theory authorized by the jury charge" (citing *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004))).

6

"A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or both." Tex. Penal Code § 7.01(a). "A person is criminally responsible for an offense committed by the conduct of another if: . . . acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id.* § 7.02(a)(2). Section 7.02(b) of the Penal Code further provides:

> If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.

*Id.* § 7.02(b). "Party participation may be shown by events occurring before, during, and after the commission of the offense, and may be demonstrated by actions showing an understanding and common design to do the prohibited act." *Salinas v. State*, 163 S.W.3d 734, 739–40 (Tex. Crim. App. 2005) (citing *Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994)); *see Gross v. State*, 380 S.W.3d 181, 186 (Tex. Crim. App. 2012). "Evidence is sufficient to convict under the law of parties where the defendant is physically present at the commission of the offense and encourages its commission by words or other agreement." *Salinas*, 163 S.W.3d at 739.

Appellant does not dispute that he was present when Marsh was killed but challenges the sufficiency of the evidence to show that he "intentionally and knowingly committed an act clearly dangerous to human life" or that he "committed the offense of aggravated robbery during the commission of the alleged offense." He contends that "there was

7

never any plan to kill anyone"; he "never touched Marsh"; there was no plan to rob Marsh; and if Jones's testimony was truthful, appellant "only took belongings from Marsh's pocket after Lewis had already killed Marsh." Appellant relies on Jones's testimony during cross-examination. Jones testified that in the vehicle when they were looking for Marsh, they did not discuss that they were going to take Marsh's phone or beat Marsh up, that he did not believe that there was a possibility that a man would be killed, that Lewis was the only person who struck Marsh, and that appellant "went in [Marsh's] pockets" and "took his phone and lighter" and "knife" after Marsh had fallen to the ground.

The State, however, was not required to prove that appellant intended to kill Marsh or that Marsh was still alive when appellant took Marsh's property.[3] *See* Tex. Penal Code §§ 7.02(b), 19.02(b)(3). A rational trier of fact also could have found that portions of Jones's testimony were not credible and resolved the inconsistencies in his testimony in favor of the verdict. *See Jackson*, 443 U.S. at 319; *Zuniga*, 551 S.W.3d at 733. Jones admitted that he had given three different statements to law enforcement, had not told the entire truth, and had lied. Further the jury reasonably could have credited the video-surveillance footage that captured the verbal altercation between appellant and Marsh outside the store to conclude that appellant and the others planned to rob Marsh. In the footage, appellant is seen holding a crowbar and telling Marsh that "[y]ou don't know whose streets you're on," appellant "[will] get somebody to come over and handle this shit, bro," and "[b]e here when [he got] back. Watch how many people are going to be here."

---

[3] Even if the State were required to show that Marsh was alive when appellant removed Marsh's property, one of the 911 callers stated that Marsh appeared to be breathing "barely but not much."

8

The video footage showed that Marsh was holding his phone during the altercation at the store. After the altercation, appellant sought the assistance of Brownlee and fellow members of Long Branch Posse, Lewis and Jones, to locate Marsh. Jones testified that appellant called him about the "dude" who "threatened" him and Brownlee with a knife and took a picture of his license plate and asked where Lewis was. Appellant and Brownlee then picked up Jones and Lewis, and they drove around to "find the dude that threatened [appellant] with the knife" to "beat him up" and "take his phone." Jones also testified that members of Long Branch Posse did not like strangers taking their pictures. According to Jones, appellant told Lewis that "he got a crowbar and that there's another one in the trunk," and to tell Brownlee "to pop the trunk so [Lewis] can get the crowbar out of the trunk when [they saw Marsh]." Jones testified that once they located Marsh, appellant got out of the vehicle with a crowbar and asked Marsh, "Do you remember me?" Lewis then used a saw and screwdriver that he got out of the trunk to strike and stab Marsh.[4] Appellant took Marsh's phone, lighter, and knife; and the four of them left the scene together. When the police arrived, Marsh did not have his phone, and his pockets were pulled out. The police recovered a knife in appellant's vehicle.

The jury reasonably could have credited this evidence to find that appellant planned with the others to rob Marsh of his property; "should have . . . anticipated" "an act clearly dangerous to human life" when they decided to rob Marsh using a saw, screwdriver, and crowbar, *see* Tex. Penal Code § 7.02(b); and solicited the others' assistance, directed and encouraged Lewis, and actively participated in robbing Marsh, *see id.* § 7.02(a)(2); *Salinas*, 163 S.W.3d at 739–40; *see also Hanson v. State*, 55 S.W.3d 681, 688–90 (Tex. App.—Austin

---

[4] In one of his sworn statements that was admitted as an exhibit, Jones recounted that Lewis "said he had a saw, but he threw it down because it wasn't knocking the man out and that he couldn't find the crowbar in the trunk."

2001, pet. ref'd) (holding that there was legally sufficient evidence to find defendant guilty of capital murder as party where defendant knew about plan to rob complainant, provided weapon that was used to kill complainant, and retrieved weapon after killing). Thus, we conclude that the evidence was sufficient to support the jury's guilty verdict and overrule appellant's first issue.

**Statement in Autopsy Report**

In his second issue, appellant contends that "the trial court abused its discretion in allowing the Medical Examiner to give his opinion that a robbery occurred where he had no expertise or personal knowledge to do so" and that he was harmed by the erroneous admission. At trial, appellant objected to and sought to have the following statement redacted from the autopsy report: "History that the decedent was found unresponsive after being assaulted by other individuals during an apparent robbery." The trial court overruled appellant's objection and admitted the autopsy report without redacting the statement.

*Standard of Review and Applicable Law*

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018); *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016). "An abuse of discretion does not occur unless the trial court acts 'arbitrarily or unreasonably' or 'without reference to any guiding rules and principles.'" *State v. Hill*, 499 S.W.3d 853, 865 (Tex. Crim. App. 2016) (quoting *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990)). Further, we may not reverse the trial court's ruling unless the determination "falls outside the zone of reasonable disagreement." *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016); *see Henley*, 493 S.W.3d at 83

10

("Before a reviewing court may reverse the trial court's decision, 'it must find the trial court's ruling was so clearly wrong as to lie outside the zone within which reasonable people might disagree.'" (quoting *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008))). An evidentiary ruling will be upheld if it is correct on any theory of law applicable to the case. *Henley*, 493 S.W.3d at 93 (citing *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009)).

"A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Tex. R. Evid. 702. "An expert may base his opinion on facts or data in the case that the expert has been made aware of, reviewed, or personally observed" and the facts or data "need not be admissible for the opinion to be admitted" when "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." *Id.* R. 703. An expert witness generally may testify about the facts and data underlying his opinions. *See id.* R. 705.

*History Statement*

Appellant does not dispute that the medical examiner was an expert in the medical field and qualified to opine on the manner and cause of Marsh's death. Appellant contends that the medical examiner was "not an expert in the legal field" and, thus, that he "should not have been allowed to give his opinion that Marsh died because he was assaulted during a robbery." Appellant also argues that the medical examiner's "opinion was one which supplanted the jury's decision because he testified to an ultimate question" and that the medical examiner did not have

11

personal knowledge. *See* Tex. R. Evid. 701 (limiting lay witness's opinion "to one that is . . . rationally based on the witness's perception").

The history statement, however, is not properly characterized as an expert opinion. The report and the medical examiner's testimony make clear that the statement was part of the underlying facts or data that the medical examiner relied on in forming his expert opinion. *See id.* R. 703, 705. In his testimony before the jury, the medical examiner confirmed that he had no direct knowledge of the history statement, that it was "investigative information provided to him," and that the history statement "[was] just a history you take the way a doctor would take the history of a patient." He further described what the history statement was:

> History—so in the course of putting an autopsy report together, we utilize as much information as we have access to including what we see at the time of the autopsy, any investigative information that either our investigators obtain or we obtain through speaking with law enforcement, toxicology findings, microscopic evidence, if that's performed, in order to get a full picture and render the most accurate opinion on cause and manner. So in this case in particular—well, through the autopsy alone, the history was that the decedent was found unresponsive and his injuries were consistent with having been assaulted. And the investigative information was that he was assaulted by some other individuals during what may have been a robbery.

Prior to the autopsy report's admission and outside the jury's presence, the medical examiner testified that "investigative information" is among the types of information that are "vital" when they were "trying to render an opinion on cause and manner of death." He further testified:

> The investigating detective was the one who relayed it, originally when it was called in and then also later on that there are witnesses who reported they [had] seen him get assaulted, we saw injuries consistent with that. And then as far as the robbery, it was just part of the information that the decedent's belongings were absent and that just came as part of the investigation. It's also why it's just

12

listed as a history statement. It's just something that we have been told. I don't know personally a hundred percent fact to that, but it's consistent with the story.

\*\*\*

. . . we use investigative information all the time to render an opinion on manner of death.

\*\*\*

But my point is, the history that I was given up until completing the report was that the decedent had been assaulted, which we see injuries consistent with that, and that it was possibly during a robbery. And that's why I say apparent because I don't know that there was a robbery.

Based on the medical examiner's testimony, the trial court reasonably could have concluded that the history statement was among the types of facts or data on which experts in his field reasonably rely. *See* Tex. R. Evid. 703. Thus, we conclude that the trial court did not abuse its discretion in overruling appellant's objection to the history statement's admission. We overrule appellant's second issue.

**Confrontation Clause**

In his third issue, appellant argues that he was denied the right to confront a witness when the trial court allowed the medical examiner "to show the jury a screwdriver that a police officer told him could have caused Marsh's injuries."

*Standard of Review and Applicable Law*

The Confrontation Clause bars admission of testimonial statements of a witness who does not appear at trial unless the witness is unavailable and the defendant had a prior opportunity for cross-examination. *See* U.S. Const. amend. VI (including, among rights of accused in criminal prosecutions, right "to be confronted with the witnesses against him"); *Davis*

*v. Washington*, 547 U.S. 813, 821–22 (2006) (discussing Confrontation Clause and explaining distinction between testimonial and non-testimonial statements (citing *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004))); *see also Woodall v. State*, 336 S.W.3d 634, 642 (Tex. Crim. App. 2011) ("[T]o implicate the Confrontation Clause, an out-of-court statement must: (1) have been made by a witness absent from trial and (2) be testimonial in nature.").

"Although we defer to a trial court's determination of historical facts and credibility, we review a constitutional legal ruling, *i.e.* whether a statement is testimonial or non-testimonial, *de novo*." *Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006); *see Cook v. State*, 199 S.W.3d 495, 497 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (explaining that appellate court reviews de novo trial court's ruling that admission of evidence did not violate defendant's rights under Confrontation Clause); *Davis v. State*, 169 S.W.3d 660, 665 (Tex. App.—Austin 2005), *aff'd* 203 S.W.3d 845 (Tex. Crim. App. 2006) (same).

*Statement to Medical Examiner Concerning the Screwdriver*

Appellant contends that his right to confront a witness was violated when the medical examiner referenced a police officer's statement to the medical examiner that the screwdriver could have caused Marsh's injuries. The record does not support appellant's contention. The medical examiner testified that he spoke with law enforcement after he concluded the autopsy and had "concerns about trying to figure out exactly what caused the injuries" and that a detective sent him "some photographs of some tools they found and believed to be related to the crime." The medical examiner did not testify that the detective told him that

14

the screwdriver caused the injuries,[5] and appellant does not dispute that the police found a Phillips-head screwdriver in his vehicle. In this context, the medical examiner reasonably relied on and testified about the photograph of a Phillips-head screwdriver to explain his underlying reasoning as to his opinion of the cause and manner of death. *See* Tex. R. Evid. 703, 705(a). The medical examiner testified that the penetrating wound was consistent with "the shape of the tip" of a Phillips-head screwdriver because it "has kind of a cross at the tip which can leave a particular pattern injury, which is similar to [Marsh's wound]."

We also observe that the detective who searched appellant's vehicle and found the screwdriver, the detective who accompanied Marsh's body to the medical examiner for the autopsy, and the lead detective testified at trial. Thus, even if statements from detectives to the medical examiner were testimonial in nature, appellant had the opportunity to question the detectives at trial about their statements to the medical examiner, but he chose not to do so. We conclude that appellant has not shown a Confrontation Clause violation and overrule appellant's third issue.

## CONCLUSION

Having overruled appellant's issues, we affirm the trial court's judgment of conviction.

---

[5] When the prosecutor was proving up the predicate for admitting the photograph, the medical examiner did not finish his answer about what the detective told him because defense counsel objected. The medical examiner testified: ". . . But we determined that this wasn't a gunshot wound for the reasons that I mentioned before. And once the detective I was speaking with told me they thought maybe the screwdriver was—." It was at that point that defense counsel objected, and the medical examiner did not finish his answer.

_____

Melissa Goodwin, Justice

Before Justices Goodwin, Kelly, and Smith

Affirmed

Filed:   May 27, 2021

Do Not Publish